City of Tecumseh v. Phillips.

CITY OF TECUMSEH, PLAINTIFF IN ERROR, V. CYRUS S. PHILLIPS, TREASURER OF JOHNSON COUNTY, DEFENDANT IN ERROR.

1. **License Moneys.** Moneys collected by the corporate authorities of towns and cities of the second class, for license to sell intoxicating liquors, belong to the school fund of the county, and when collected should be paid over to the county treasurer.

2. ———: ACTION BY COUNTY TREASURER. When such funds are not paid over to the county treasurer, voluntarily, it is his duty to enforce payment, and he may do so by an ordinary civil action.

3. ———: ———. The authority to bring such action by the treasurer, although not expressly given, is clearly implied from the obligation he is under to make the collection.

4. **Constitutional Law.** The third section of the act of the legislature, amendatory of the act to incorporate cities of the second class, approved Feb. 25, 1875, *held* to be unconstitutional and void.

ERROR from the district court of Johnson county. The city of Tecumseh and others were defendants below, and judgment being rendered against them, they brought the cause here by petition in error. The amount sued for, and recovered, was for license moneys received by the city treasurer, for licenses issued by the city council under authority given by the criminal code. The section giving this authority is as follows:

SEC. 586. All the powers and duties in this chapter devolving upon the county commissioners, shall belong to and be exercised exclusively by the proper authorities of any or all incorporated towns and cities of this state, within the incorporated limits thereof, and the authorities of such towns and cities are hereby empowered to make all needful rules, and pass all necessary ordinances, decrees, or orders to carry out the intent of this chapter. They may determine what municipal officer shall receive

VOL. V.—20

the petition, file the bond, and receipt, and issue the license as in section five hundred and seventy-two required: *Provided, however,* That such incorporated cities and towns may require such additional sum to be paid for license under this chapter as to them may seem best, not to exceed one thousand dollars, which sum, together with the sum herein required to be paid to the county treasurer, may be paid to the treasurer of the town or city, who shall account for the same, and his receipt therefor shall be equivalent to the receipt of the treasurer of the county, for all the purposes named in section five hundred and seventy-two. General Statutes, 855.

*T. Appleget,* for plaintiff in error.

I. The county treasurer, being but a portion of the political machinery of the county, cannot claim for himself, by virtue of his office, greater latitude of construction than that applied to the county itself.

1. The statutes of Nebraska nowhere clothe the county treasurer as such, with power to sue and be sued. It, at all times, recognizes him as a ministerial officer, with special powers, such as to seize upon and sell property for the payment of taxes, etc.; and, unless the statute do so expressly authorize him, he has no such power, as is clearly shown by the authorities.

2. And, further, the code (see General Statutes, 528, sections 29 and 30), requires that all actions be brought in the name of the real party in interest, except as is provided in section 32.

It is evident from the facts stated in the petition, that the county treasurer is not the real party in interest; neither do we think that section 32, in the least, removes the disability, for he is plainly not a trustee of an express trust. 2 Bouvier's Law Dic., 615. *Hunter v. Commissioners of Mercer County,* 10 Ohio State, 515

II.   It has been contended that the act of February 25, 1875, laws of 1875, page 205, is unconstitutional, for the following reasons, to-wit:   The object of the act is not set forth in the title, and that the act contains more than one subject; and also, that the original act, as well as the act amended, is not properly set forth.   To all of which I answer as follows:

1.   That the title, although general in its terms, is sufficiently explicit to apprise all persons of its contents, in a general way, and by so doing meets the requirements of the constitution and the object of its framers.   Cooley on Con. Lim., pages 143, 144, section 2.   *People v. Mahaney*, 13 Mich., 495.   *Whiting v. City of Mount Pleasant*, 11 Iowa, 482.   *Bright v. McCullough*, 27 Ind., 223.   *Mayor, etc., of Annapolis v. State*, 30 Md., 112.

2.   In respect to the position that the original act, or so much thereof as is amended, being recited in the amendatory act, I need but refer the court to the case of *People v. McCallum*, 1 Neb., 182, which settles this state.

*S. P. Davidson*, for defendant in error.

Defendant in error contends that all moneys collected in this state for license to sell malt, spirituous and vinous liquors belong to, and are for the use of the school fund.   General Statutes, 851, section 572.

It makes no difference in respect to this matter whether the license be issued by the county commissioners or the authorities of incorporated towns or cities.   *Sexson v. Kelley*, 3 Neb., 104–107.

The county treasurer is required, by law, to collect the fines and all moneys for school purposes in his county, and report to the state auditor a statement, showing the whole amount of money collected from   *   *   school tax, and from all other sources, respectively; and the

amount received on account of licenses and fines and from all other sources from which school funds are derived. General Statutes, 974, section 72.

Money received by magistrates and clerks on account of forfeited recognizances, fines, etc., shall be paid to the county treasurer. Id., 840, section 534.

The county treasurer shall credit all moneys received from fines and recognizances to the county school fund. Id., 842, section 540.

The county treasurer is required to take all proper' measures to secure to each district its full share of county school funds, and report to state auditor—not only funds for school purposes received, but also amount of same paid out, and to whom paid; and is only required to pay the balance which remains in his hands unpaid, to the state treasurer. Id., 974.

In this case, suit cannot be brought in the name of the state, because it is not the party interested, nor is the county alone, nor are both together; and, hence it is made the duty of the county treasurer to collect and distribute to each fund its share.

LAKE, CH. J.

This is a petition in error from Johnson county.

The questions presented arise upon a demurrer to the petition, which being overruled, a judgment was given against the defendants for the amount claimed by the plaintiff. The action was brought by the plaintiff, Phillips, as treasurer of Johnson county, to recover a sum of money alleged to have been received by the defendants below, from several persons, from time to time, for licences to sell intoxicating liquors in the town, and city of Tecumseh.

It is contended by the plaintiff in error, that these demurrers should have been sustained, for several reasons,

which we will notice in the order in which they were presented in the argument before us.

I. That the county treasurer is not authorized to sue for these moneys, for the reason that: "The statutes of Nebraska nowhere cloth the county treasurer, as such, with power to sue and be sued."

We think there is ample authority to be found in the statutes for the treasurer to maintain this action. By section 72 of the general school law, his duty in respect to this class of funds is very clearly set forth. It is provided that: "The county treasurer shall collect, or cause to be collected, the fines, and all moneys for school purposes in his county, and take all proper measures to secure to each district its full amount of school funds," etc. Now, although he is not, in specific terms, directed to institute suits to recover these moneys when not paid over to him voluntarily, yet, inasmuch as no other means are provided, his duty to do so is very clearly implied. The duty of collection being enjoined upon him, and no particular mode of doing so having been pointed out, it must have been the intention of the legislature that he should employ the ordinary means of enforcing payment where money is wrongfully withheld by one person from another.

In respect to the ordinary taxes levied for school purposes, a specific mode of collection is provided, which must, of course, be pursued in enforcing their payment. But this is not the case with respect to funds arising from fines, forfeited recognizances, and licenses. These are collected, in the first place, by various officers, whose duty it is to hand them over at once to the county treasurer, to be credited by him to the proper fund.

Suppose, however, that these officers refuse obedience to the law in this regard, and retain the money, what is to be done? Is there no means by which they may be

compelled to disgorge? Is the county treasurer, while directed in positive language to collect these funds, powerless to do so, simply because no specific mode is pointed out? We think not. The authority to make the collection being expressly given, in the absence of any specific direction, it will be presumed that the legislature intended it should be done by a resort to the ordinary means provided for enforcing the payment of debts.

The moneys in controversy belonged to the county school fund, and it was the duty of the defendant in error, to enforce their payment promptly. If to do so, it became necessary for him to resort to an ordinary civil action, his right, nay even his duty, to do so is very clearly implied.

II. But, it is contended that the city of Tecumseh having appropriated these moneys to its own use, they fall within the operation of section three of the act of the legislature, amendatory of the act to incorporate cities of the second class, approved February 25th, 1875, and that, therefore, the treasurer is not entitled to recover, in this particular case, even if we should hold that a county treasurer is authorized to receive this class of moneys, where no such appropriation has been made.

Section three of this act provides: "That in all cases in which cities of the second class, have collected and expended for the use and benefit of such cities, either in works of internal improvement, or otherwise, moneys collected from licenses for the sale of intoxicating liquors, such expenditures are hereby declared to be legal, and the same is hereby ratified and confirmed, and such cities of the second class, are hereby exonerated from any and all liability therefor."

It will be noticed that the title to this act purports to have two objects in view: *first*, to amend the general incorporation law for cities of the second class; and

*second*, to legalize certain taxes.   But we fail to discover wherein it is, in any particular, amendatory of the general act relating to cities of the second class.   The first section is devoted entirely to the legalization of certain taxes, supposed to have been illegally levied.   The second section relates to the legalization of all bonds issued by any city of the second class, etc., and the third section is devoted entirely to the exemption of any such city from liability for license moneys illegally withheld from the school fund, "and expended for the use and benefit of such cities, either in works of internal improvement or otherwise."

It would seem to need no argument to show that this third section of the act is not, even by the most liberal construction, included in the title to the act.   It is in nowise amendatory of the general incorporation law for cities of the second class, nor does it make any allusion to the legalization of any taxes whatever.   And it is very clear to our minds, that the section is obnoxious to that provision of the constitution, in force when the act was passed, which declares that: "No bill shall contain more than one subject, which shall be clearly expressed in its title," etc. Sec. 19, Art. 2, constitution of 1866. To hold otherwise, would be to ignore entirely the plain requirements of this wholesome provision of the fundamental law.

We must hold, therefore, that this section of the act of the legislature, upon which the chief reliance was placed to exempt the city from liability, is absolutely void, and furnishes no defense whatever to the plaintiff's cause of action.   The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.