THE B. & M. R. R. Co. IN NEB., APPELLEE, v. THE BOARD OF COUNTY COMMISSIONERS OF SAUNDERS CO., APPELLANT.

1.  Constitutional Law: ROAD TAXES. Land road taxes, legally levied but not collected before the constitution of 1875 took effect, although not imposed upon the basis directed by that instrument are not invalidated by it.

2.  ———: DISTRICT SCHOOL BOND TAX. That provision of the act of the legislature, approved February 25th, 1875, entitled "An

---

* NOTE.—See People v. McClay, 2 Neb., 7.   The State v. Cunningham, 6 Neb., 90.

act to amend 'An act to provide for the registration of precinct or township and school district bonds,' " making it the duty of the county commissioners to levy the necessary taxes to meet the liability incurred by such bonds, is in conflict with Sec. 19, Art. 2, of the constitution of 1867, which declares that " No bill shall contain more than one subject, which shall be clearly expressed in its title," and therefore void.

8. ———: ———. In the year 1875, the county commissioners of Saunders county, of their own motion, and under the supposed authority conferred by said amendatory act, levied the district school bond tax complained of. *Held*, that under the law as it then stood, such taxes could be legally levied only in pursuance of direction from the district as to the amount required.

APPEAL from a decree of the district court of Saunders county, POST, J., presiding, enjoining the collection of taxes levied in the year 1875, to pay school district bonds issued by several districts of that county, and dismissing the petition as to land road taxes levied for the same year.

*T. M. Marquett*, for plaintiff, appellee.

*Clinton Briggs*, for defendant, appellant.

LAKE, J.

In this case two questions are presented for our decision. The *first* concerns the land road tax of one dollar upon each forty-acre tract, without regard to value, levied by the county commissioners for the year 1875, pursuant to the requirements of the statutes then in force; and the *second*, certain taxes levied by them upon their own motion to discharge the bonded indebtedness of school districts within the county as it should fall due.

As to the road tax, the plaintiff contends that, although legally imposed, it was rendered invalid and uncollectible by force alone of our present constitution,

which requires all taxes upon property to be levied according to its valuation. The constitution went into operation on the first day of November, 1875, after said taxes were levied, and before they became delinquent. The precise question raised upon this road tax was decided in the case of *B. & M. R. R. Co. v. York County*, 7 Neb., 487, where it is held that the tax having been levied before the constitution took effect, its provisions as to the mode or basis of levy did not apply. The decision in that case furnishes a guide for us in this, and we must hold that the collection of said road tax cannot be enjoined.

As to the levy for district school bond purposes, it appears, as before stated, that the commissioners made it on their own motion, and without its having been voted or "reported by said school district boards or either of them." It is contended on the part of the plaintiff that, without the affirmative action of the proper district in ordering a levy to meet its bonded indebtedness, the county commissioners were powerless to make one. On the other hand this independent action of the commissioners is sought to be upheld by the act of February 25th, 1875, entitled: "An act to amend 'An act to provide for the registration of precinct or township and school district bonds.'" Laws 1875, p. 185. The only change of the former statute sought by this amendment is embodied in these words: "It shall be the duty of the board of county commissioners in each county to levy annually upon all the taxable property in each precinct or township and school district in such county a tax sufficient to pay the interest accruing upon any bonds issued by such precinct, township, or school district, and to provide a sinking fund for the final redemption of the same; such levy to be made with the annual levy of the county, and the taxes collected with other taxes,

and when collected shall be and remain in the hands
of the county treasurer a specific fund for the payment
of the interest upon such bonds, and for the final pay-
ment of the same at maturity."

Now the original act, conforming strictly to its title,
provides merely what steps shall be taken for the reg-
istration of these bonds by the county clerk, upon facts
to be reported to him by the proper precinct or school
district officers. (Gen. Stat., 883.) The *first* section
makes it the duty of these local officers, "after first
having filed for record with the county clerk the ques-
tion of submission, return of votes for and against,
notice and proof of publication," under which the
particular bonds were issued, to report them for reg-
istry to that officer. Section *two* requires the county
clerk to "record in a book prepared for that purpose
the question of submission, notice, and proof of pub-
lication, return of votes for and against," as reported
to him by the local officers. Section *three* directs the
clerk as to the particular entries to be made in his reg-
istry of the bonds. The only other provision of this
act, except as to its taking effect, is the *fourth* section,
which requires the local officers of precincts and school
districts to report to the county clerk, for registry,
bonds issued before its passage, but not already paid.

From this brief statement of its substance it will be
seen that the original act, in all of its provisions, is
confined strictly to the one object indicated by its title,
viz.: "the registration of precinct or township and
school district bonds." Not a word is found, either in
the title or the body of the act, concerning their pay-
ments, for which, indeed, there was already ample
provision in other acts of the legislature. Not only
was no attempt made in the original act to go beyond
the limits set in its title, but the legislature could not
rightfully have done so, in view of the constitutional

inhibition that " No bill shall contain more than one subject, which shall be clearly expressed in its title." Constitution of 1867, Art. II., Sec. 19.

The title to the act in question is very restrictive, much more so than was necessary; but the legislature, having thus set bounds for themselves, they could not lawfully overstep them. No one will for a moment contend that the raising of money by taxation to meet a bonded indebtedness has the least necessary connection with the subject of bond registration. Doubtless a title might have been framed of so broad a scope as to have included both of these matters as means for securing a desired result. Here, however, we have registration of certain bonds as the ulterior—in fact the only expressed—object to be accomplished. Now while registration might very properly be made a step in providing for the payment of bonds, it is very clear that taxation cannot possibly be a step toward, nor incident to, their registration. And we may add further, that the title of this amendatory act is no broader, nor could it properly be, than that of the original. Ostensibly they cover precisely the same ground. Therefore, whatever might have been enacted under the title of the former statute, and nothing beyond it, could rightly be included in the amendatory act. And this being so, it follows that the clause above quoted of February 25, 1875, having no relation to the matter of registration, cannot be regarded as an amendment of the act of 1873, but rather as an ingraftment upon it, under the guise of an amendment, of a new and entirely foreign subject, which the constitution did not permit. In deciding upon the validity of the school-bond tax this amendatory act therefore must be laid aside, and the authority of the county commissioners to levy such a tax sought for elsewhere.

By sec. 32 of the general school law it is provided that the qualified voters of a school district, " when assembled at any annual or special meeting, may from time to time impose such tax as may be necessary, * * * to pay and discharge any debts or liabilities of the district lawfully incurred." (Gen. Stat., 966.) And in case of a failure of the district thus to determine the amount of the tax to be levied, sec. 34 imposes that duty upon the district school board, who are also required, by section 55 of the same act, to report the tax so determined upon to the county clerk, " to be levied on the taxable property of the district." (Gen. Stat., 970.) At the time of making the levy in question these several provisions governed, and they provided the only basis on which it could have been legally made. It was for the district itself, either by a vote of its electors when lawfully assembled, or, in default of this, by a resolution of its school board, to ascertain and fix the amount required; and unless such action were first taken and made known to the county commissioners they were entirely without authority to act in the matter.

The judgment of the district court, having been in conformity with these views, is affirmed.

JUDGMENT AFFIRMED.