STATE OF NEBRASKA, EX REL. FRANK A. GRAHAM ET AL., v. ADDISON S. TIBBETS ET AL.

FILED JUNE 26, 1897. No. 9179.

1. Statutes: TITLES OF ACTS. Under the provisions of section 11, article 3, of the constitution, the title to an act must fairly express the subject of legislation.

2. ———: AMENDMENTS. Where the title to a bill is to amend an existing act, or a section thereof, no amendment is permissible which is not germane to the subject-matter of the original act or section indicated.

3. ———: ———. An act not complete in itself, but which is clearly amendatory in its nature and scope, must set forth the section or sections as amended, and repeal the original section or sections.

4. ———: ———: TITLES. The title to an act entitled "An act to amend sections 3, 8, 9, 11, 12, 13, * * * 91, and 115" of a prior act, is a restricted and limited one, which it is not the province of the courts to enlarge or amend. Under such a title the amendment of any section must be germane to the particular original section proposed to be changed.

5. ———: ———: ———. Section 31 of Senate File 176 of the legislature of 1897 (Session Laws, ch. 14, p. 175), purporting to amend section 91 of article 1, chapter 13a, Compiled Statutes, 1895, is unconstitutional and void because in conflict with section 11, article 3, of the constitution of this state, since it contains subject-matter not expressed in the title to the act, nor germane to the original section, and is amendatory of prior laws.

ORIGINAL action in the nature of *quo warranto* to oust respondents from the offices of members of the excise board of the city of Lincoln. *Writ allowed.*

*Hiland H. Wheeler, Burr & Burr,* and *M. B. Reese,* for relators.

*Tibbets Bros., Morey & Ferris,* and *Morning & Berge, contra.*

NORVAL, J.

This was an original action of *quo warranto* brought by the state, on the relation of Frank A. Graham, Richard S. Grimes, and Harry B. Vaill, against Addison S. Tibbets, John H. McClay, and Fred A. Miller, to test the right of the respondents to discharge the duties of the office of the excise board of the city of Lincoln. The information alleges, in effect, that the relator Graham is now, and for more than two years last past has been, the duly elected, qualified, and acting mayor of said city, and by virtue of his office is a member, and chairman, of the excise board of the city of Lincoln; that the relators Grimes and Vaill are the other members of such board, each having been elected in April, 1895, for the term of two years, and until the election and qualification of his successor in office, and duly qualified and entered upon the discharge of the duties and functions of such office, and no successors ever have been elected and qualified; and that the respondents, since the 19th day of April, 1897, have usurped, used, and exercised the office of the excise board of the city of Lincoln, and excluded relators therefrom. The answer of the respondents substantially admits the averments contained in the information, and alleges, in effect, that the respondents, on the 23d day of March, 1897, were appointed and commissioned by Governor Holcomb as members of the board of fire and police commissioners in and for the city of Lincoln; that each respondent accepted such appointment and duly qualified as such commissioner, and that since the act of the legislature of 1897 went into force relators had no right or authority to perform the duties of members of the excise

board of the city of Lincoln. To the answer relators demurred, and the cause has been submitted for determination.

The state legislature of 1889 passed a law, which received executive approval, entitled "An act to incorporate cities of the first class, and regulating their duties, powers, government, and remedies." (Laws, 1889, ch. 14.) The provisions of this act, with the subsequent acts amendatory thereto, govern cities of the class to which the city of Lincoln belongs. Section 13 of said act was amended in 1891. (Laws, 1891, ch. 8; Compiled Statutes, 1895, ch. 13a, art. 1.) As thus amended, it provided: "A mayor, treasurer, clerk, water commissioner, city attorney, city engineer, and police judge shall be elected by a plurality of votes for the term of two years, and biennially thereafter. * * * There shall also be in each city governed by this act an excise board, consisting of the mayor, who shall be ex officio member and chairman thereof, and two members elected by the city at large, who shall hold their offices for two years. The terms of all elective officers shall commence on the Tuesday next after their election, and continue until their successors are elected and qualified," etc. It is under and by virtue of the foregoing piece of legislation that relators claim the right to discharge the duties and functions of the excise and police board of the city of Lincoln.

The respondents were appointed by the governor as members of the board of fire and police commissioners of said city, under the provisions of section 31 of the act of the legislature of 1897 known as Senate File 176 (Session Laws, 1897, ch. 14, p. 139), entitled "A bill for an act to amend sections three (3), eight (8), nine (9), eleven (11), twelve (12), thirteen (13), fourteen (14), fifteen (15), sixteen (16), seventeen (17), eighteen (18), twenty (20), twenty-one (21), twenty-six (26), twenty-eight (28), twenty-nine (29), thirty (30), thirty-one (31), thirty-three (33), thirty-seven (37), thirty-eight (38), fifty (50), sixty-four (64), sixty-five (65), sixty-seven (67), sixty-nine (69), seventy (70),

seventy-one (71), seventy-eight (78), eighty (80), eighty-three (83), ninety-one (91), and one hundred and fifteen (115), chapter 13a of article 1 of the Compiled Statutes of 1895, for the government of cities of the first class having more than twenty-five thousand and less than one hundred thousand inhabitants, and to repeal section ten (10) and repeal said original sections and all amendments thereto, and all acts and parts of acts inconsistent with this act." Section 31 of the act reads thus:

"Section 31. That section 91 shall be amended to read as follows: Sec. 91. In a city of the first class there shall be a board of fire and police commissioners, who shall consist of three residents and electors of such city, who shall be appointed by the governor of the state. The governor shall, within thirty days from and after the passage of this act, appoint as the commissioners above named three citizens, not more than two of whom shall be from one political party; one of them shall be designated in said appointment to serve until May 1, 1898, the second to serve until May 1, 1899, and the third to serve until May 1, 1900. And thereafter, at the expiration of said several terms, the governor shall appoint one member of said board for the term of three years. For official misconduct the governor may remove any of said commissioners; any person aggrieved by any act of said commissioners may file written charges against such commissioner or commissioners with the governor, who shall within a reasonable time investigate the same upon testimony produced before him, and shall make a finding as to the truth or falsity of such charges, and any and all vacancies of said board, by reason of death, resignation, or removal, shall be filled by said governor for the unexpired term, and all vacancies, from whatever cause, shall be so filled that not more than two of said board shall be of the same political party." (Session Laws, 1897, ch. 14, p. 175.) The remainder of the section is too lengthy to reproduce here. For present purposes it is sufficient to state that it provides substantially that a majority of the

board should constitute a quorum; that each commissioner, before entering upon his duties, should take and subscribe a prescribed oath of office, and give a bond in the sum of $1,000; that all the powers and duties connected with, and incident to, the appointment, removal, government, and discipline of the officers and members of the fire and police department of the city should be invested in, and exercised by, the board of fire and police commissioners, and that such board should have the exclusive control of the licensing and regulating of the sale of intoxicating liquors in such city, with a referendum clause reserving the right to have submitted, under certain conditions, the question of the licensing of the liquor traffic in such city to the qualified electors thereof.

It is under the foregoing section that respondents claim to be officers, and which section relators insist is invalid and void under section 11 of article 3 of the constitution, which declares that "No bill shall contain more than one subject, and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." The constitutionality of said section 31 of the said act of 1897 is the important question presented for consideration. If said section is repugnant to the constitutional provision quoted, the demurrer to the answer of the respondents is well taken, and the writ prayed for in the relators' petition should be granted.

The eleventh section of article 3 of the state constitution has been often before the court for consideration, and the intent, scope, and object to be attained by its adoption as a part of the fundamental law has been so well and clearly stated in numerous decisions, in this and other states, as to render unnecessary a general discussion of the subject anew at this time. It has been uniformly decided that the provision of the constitution is mandatory, and that the courts will not declare a statute unconstitutional unless it is clearly so. Furthermore,

that the object of this provision concerning title to bills is to prevent obnoxious and surreptitious legislation, and not to prohibit comprehensive titles. (*White v. City of Lincoln*, 5 Neb., 505; *Paxton-Hershey Irrigating Co. v. Farmers & Merchants Irrigating Co.*, 45 Neb., 884; *Van Horn v. State*, 46 Neb., 62; *State v. Bemis*, 45 Neb., 724.) An act is unconstitutional and void if the "title is not broad enough to include the subject-matter of legislation." (*Smails v. White*, 4 Neb., 353; *White v. City of Lincoln*, 5 Neb., 516; *City of Tecumseh v. Phillips*, 5 Neb., 305; *State v. Lancaster County*, 6 Neb., 474; *Burlington & M. R. R. Co. v. Saunders County*, 9 Neb., 507; *Ives v. Norris*, 13 Neb., 252; *Holmberg v. Hauck*, 16 Neb., 337; *Weigel v. City of Hastings*, 29 Neb., 379; *Sheasley v. Keens*, 48 Neb., 57.) The purpose of the constitutional provision under consideration, as has been repeatedly declared to be, is to give notice, through the title of the bill, to the members of the legislature and the public, of the subject-matter of the projected law,—in other words, that the title should clearly indicate the legislation embraced in the bill. While the requirements of this clause of the constitution are mandatory, they are not to be exactingly enforced, or in such a manner as to hamper or cripple legislation. The title to a bill may be general, and it is not essential that it specify every clause in the proposed statute. It is sufficient if they are all referable and cognate to the subject expressed. When the subject is expressed in general terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is embraced in and authorized by it. If the subject-matter is within the scope of the title, the constitutional requirement is met. (*State v. Lancaster County*, 6 Neb., 485; *State v. Ream*, 16 Neb., 683.)

The decisions are numerous which hold that the title is bad which is not broad enough to include the subject-matter of the bill. Thus, legislation is invalid which attempts to legalize bonds under a title authorizing their

issuance. (*Hamlin v. Meadville*, 6 Neb., 234.) The title, "An act regulating the herding and driving of stock," is not sufficiently broad and comprehensive to sustain a provision giving damages for the castration of animals in certain cases. (*Ives v. Norris*, 13 Neb., 252.) "An act to prevent the fraudulent transfer of personal property" is too restrictive to include legislation making it a crime to remove mortgaged property out of the county. (*Ex parte Thomason*, 16 Neb. 239.) In *Holmberg v. Hauck*, 16 Neb., 337, the same doctrine was recognized and applied, it being held that under the title of "An act to provide for the organization, government, and powers of certain cities," the legislature could not invest police courts with concurrent and co-extensive jurisdiction with county courts of all ordinary civil actions. In *Touzalin v. City of Omaha*, 25 Neb., 817, the title of the act being "An act to incorporate cities of the first class, and regulating their duties, powers and government," it was ruled that a provision in such act forbidding the granting of injunctions to restrain the levy and collection of a special tax or assessment to pay the cost of any city improvement was not within the title, and for that reason was invalid. Section 5, chapter 66, Session Laws, 1895, providing for the leasing of convict labor, was declared to be in conflict with that clause of the constitution requiring the subjects of acts to be clearly expressed in their titles. (*State v. Holcomb*, 46 Neb., 613.) Chapter 57, Session Laws of 1889, known as the "Decedents' Law," was under consideration in *Trumble v. Trumble*, 37 Neb., 340, and held void, in that its object was not expressed in the title, and because it was, in effect, amendatory of other acts, which it did not contain.

The course of judicial decisions in this state firmly establishes the doctrine that as to original legislation, or acts complete in themselves and not amendatory in their character, the scope and purpose of the bill must be fairly reflected in its title. And the same rule is equally as applicable to amendatory statutes, according to the de-

cisions of this and other courts.   In *City of Tecumseh v. Phillips*, 5 Neb., 305, there was under consideration an act of the legislature of 1875, entitled "An act to amend an act to incorporate cities of the second class, and to define their powers, approved March 1, 1871, and to legalize certain taxes therein mentioned," and it was held that the third section of said act, which attempted to legalize the expenditures of moneys derived from licenses for the sale of intoxicating liquors, was not embraced within the title to the act, and therefore void by virtue of section 11, article 3, of the state constitution.   In *Burlington & M. R. R. Co. v. Saunders County*, 9 Neb., 507, it was decided that the provision of the act of the legislature, approved February 25, 1875, entitled "An act to amend 'An act to provide for the registration of precinct or township or school district bonds,'" which declares it to be the duty of county boards to levy the necessary taxes to meet the principal and interest of such bonds, was within the inhibition of that portion of the constitution of 1867 which reads, "No bill shall contain more than one subject, which shall be clearly expressed in its title," because such provision was not germane to the act amended, and hence not within the title.   A provision in an amendatory act repealing a statute not connected with the subject of the amendment was declared invalid in *State v. Lancaster County*, 17 Neb., 85.

It is well settled that under the title of a bill to amend an existing act, or a section thereof, no amendment is permissible which is not germane to the subject of the original legislation.   (*Miller v. Hurford*, 11 Neb., 377; *State v. Pierce County*, 10 Neb., 476; *Trumble v. Trumble*, 37 Neb., 340.)   In *Miller v. Hurford, supra*, this court said: "An amendment must be germane to the subject-matter of the act or section to be amended.   Our constitutional provision that 'No bill shall contain more than one subject, which shall be clearly expressed in its title,' is but making inviolable the rule governing legislative bodies, that 'No proposition or subject different from that under con-

sideration shall be admitted under color of amendment.'
*   *   * But if, under the pretext of amending a sec-
tion, a subject entirely foreign to the subject-matter of
the section to be amended can be introduced, this barrier
will be entirely broken down and the constitutional guar-
anty in effect destroyed."

The legislature of Michigan, in 1891, passed an act en-
titled "An act to regulate the taking and catching of fish
in the inland lakes of this state." This statute was
amended in 1893, to extend its provisions so as to in-
clude other inland waters than lakes, under the title
"An act to amend section 1 of act No. 159, Session Laws,
1891, 'An act to regulate the taking and catching of fish
in the inland lakes of this state.'" It was held in *Fish
v. Stockdale*, 69 N. W. Rep. [Mich.], 92, that the amenda-
tory law was unconstitutional in that its object was not
disclosed by the title.

Under the title of "An act entitled a supplement to an
act entitled 'An act to authorize the formation of railroad
corporations and regulate the same,'" the legislature of
New Jersey in the body of the act imposed upon railroad
corporations the duty of repairing bridges over public
roads, and empowered the courts of chancery to decree a
specific performance of this duty, while the act attempted
to be amended provided for the reduction of the capital
stock of railroad companies under certain conditions. It
was held in *New York & G. L. R. Co v. Inhabitants of Town-
ship of Montclair*, 21 Atl. Rep. [N. J.], 493, that the title of
the act did not express the subject of legislation, but
was vague and misleading, and the act was therefore
unconstitutional and void. To the same effect is *Adams
v. San Angelo Water Works Co.*, 25 S. W. Rep. [Tex.], 605.

In *Harper v. State*, 19 So. Rep. [Ala.], 857, an act en-
titled "An act to amend an act for the trial of misde-
meanors in Shelby county, approved February 12, 1891,"
was held to conflict with section 2, article 4, of the con-
stitution of Alabama, which provides that "each law
shall contain but one subject, which shall be clearly ex-

pressed in the title," in so far as the act attempted to provide for the trial of felonies, since such crimes were not included in the title.

Under the authorities the following propositions governing the enactment of laws are embraced in section 11, article 3, of the constitution: First: A plurality of subjects is prohibited. Second: The title of an act must fairly express the subject of legislation. Third: Matters can only be included in an amendatory bill which are germane to the original act. Fourth: An act not complete in itself, but which is clearly amendatory in its character and scope, must set forth the section or sections as amended, and repeal the original section or sections. (*Ryan v. State*, 5 Neb., 276; *Smails v. White*, 4 Neb., 357; *Sovereign v. State*, 7 Neb., 409; *Lancaster County v. Hoagland*, 8 Neb., 38; *City of South Omaha v. Taxpayers' League*, 42 Neb., 671; *State v. Cobb*, 44 Neb., 434.)

Tested by the principles just stated, is section 31 of said Senate File 176 (Session Laws, 1897, ch. 14, p. 175), adopted by the legislature of 1897, and which purports to amend section 91, of article 1, of chapter 13a, Compiled Statutes of 1895, repugnant to the provisions of section 11, of article 3, of the constitution? The answer must be in the affirmative. This senate file does not purport to be a complete law for the government of cities of the class to which Lincoln belongs, but the title and the body of the act alike indicate that it was intended by the framers to be amendatory alone in its scope and purpose. The title specifies the amendment of certain sections, among others, section 91, of article 1, chapter 13a, of the Compiled Statutes. And the body of the act provides "that section 91 shall be amended to read as follows: * * *." No person in reading this language would for an instant suspect that the new subject-matter of legislation proposed was foreign to the original section. Yet, what are the facts? Speaking generally, the original section 91, sought to be altered and changed by the legislature of 1897, related to the licensing and regu-

lating of the sale of intoxicating liquors by the excise
board, and the appointment by such board of a chief of
police and other police officers, but contained no provision
whatever as regards the creation, by appointment or
otherwise, of an excise or any other board. An excise
board was provided for by section 13 of article 1 of said
chapter 13a, in this unequivocal language: "There shall
also be in each city governed by this act an excise board,
consisting of the mayor, who shall be ex-officio member
and chairman thereof, and two members elected by the
city at large, who shall hold their offices for two years."
Matter entirely separate and independent from any sub-
ject indicated by the title of the act of 1897, is included
in the amendatory section 91, namely, a board of fire and
police commissioners was created, and provision made for
the appointment of the members thereof and their re-
moval from office,—a subject-matter wholly foreign to the
legislation embraced in the original section. By no
reasonable interpretation can it be said that this new
clause or provision injected into section 91 is a proper
amendment of the subject-matter of the original section.
On the contrary, it is as plain as anything can be that
such new clause or provision is amendatory of said sec-
tion 13 of article 1, chapter 13a, of the Compiled Statutes,
which last named section, as already indicated, provided
for an excise board in each city governed by the act.
Moreover, said new section 91 is amendatory of the sec-
ond proviso clause to section 25, chapter 50, Compiled
Statutes, 1895, entitled "Liquors," which declares "that
in cities of the first class having more than twenty-five
thousand (25,000) and less than eighty thousand (80,000)
inhabitants the power to license the selling or giving
away of any intoxicating, malt, spirituous, vinous, mixed,
or fermented liquors shall be vested exclusively in the
excise board of such cities." The new act attempts to
change this by confering the power to license and regu-
late the liquor traffic upon another body,—the board of
fire and police commissioners; not exclusively, however,

since the new act reserves the right to have that question determined by a vote of the electors of the city under certain contingencies.   No reference is made to said section 25, either in the title or body of the said act of 1897.

The title to Senate File 176 is not general and comprehensive, but limited.   It does not express any purpose to amend generally article 1 of chapter 13a of the Compiled Statutes, but the amendment of certain sections is proposed.   This title restricts the amendments to the particular sections mentioned in the title.   To this all will agree.   The object of an act cannot be broader than its title.   Counsel for respondents concede that under the title in question the new matter engrafted on a section must be germane to the original section.   In the brief they say: "The rule that an amended section must be germane to the original section amended is not a rule established by constitutional authority directly, but is one which necessarily arises from a compliance with the above named constitutional provision;  and it simply arises from the fact that when a section is amended it is supposed to stand by itself in its amendment, to take unto itself a title which the subject-matter of this section will allow, and must be confined to a single object. That an amended section must be germane to the section amended does not mean that it must be confined to the same limits; that it cannot be enlarged and extended beyond the limits of the original section.   It only means that it must be confined to the same subject-matter, or have the same object in view, and this subject-matter or object may be general in its nature.   So long as the legislature fairly confines itself to the object of the original section it is sufficient."   But it did not so confine itself in this case.   The general object of the original section was not offices or boards, but the licensing of liquors.   If the title to a bill must be a fair index to the contemplated legislation, the attempted amendment of said section 91 failed by reason of the constitutional provision invoked by the relators.   If said section 31 of Senate File 176,

which attempts to alter or change section 91, article 1, of said chapter 13*a*, is upheld, the very object or purpose of the fundamental law is nullified and disregarded.

We have been cited to no authority precisely in point, although the views we have expressed are in harmony with the principles announced in the cases already referred to. The decisions now to be mentioned have more or less bearing upon the question under consideration.

The first clause of the syllabus in *Ex parte Hewlett*, 40 Pac. Rep. [Nev.], 96, is in this language: "Where the title states that the subject of an act is to amend one section of a former statute, the act cannot be extended to the amendment of other sections." Billow, C. J., in the course of his opinion, observes: "It is claimed, first, that it is invalid because the title of the act does not express its subject. Stripped of its verbiage, the title states that it is to amend section 2 of the act of 1893. Section 1 provides for the amendment of section 2 of that act, as stated in the title, but from its subject-matter, which is substantially, except as to dates, the same as section 1 of the act of 1893, it appears that section 1 is the section they really wished to amend. However, as the title states that it is an act to amend section 2 of the former act, and the body of the act repeats that statement, we are of the opinion that it must be taken just as it reads, although it would seem that a mistake has been made. But the most serious point is that, after stating in the title that the act is an act to amend but one section of the act of 1893, it goes on to amend sections 4 and 8 of that act, although, as just stated, there are but two sections to the act, and consequently no section 4 or 8 to be amended. Under these circumstances, it would seem that the last two sections of the act of 1895 are unconstitutional under the provisions of section 17 of article 4 of the constitution, which directs that 'each law enacted by the legislature shall embrace but one subject, * * * which shall be briefly expressed in the title.' Having seen fit to restrict the title of the act to amending but one section of the former

act, the legislature cannot go on in the body of the act to amend other sections. (*State v. Bankers & Merchants Mutual Benefit Ass'n*, 23 Kan., 499; Sutherland, Statutory Construction, sec. 87.)"

The legislature of Colorado, under an act entitled "An act to amend section 29 of chapter 95 of the General Statutes of the state of Colorado, entitled 'Roads and Highways,' and to repeal sections 30, 31, 32, and 33 thereof, and for other purposes," substituted a new section for section 29 of the original act, the four sections indicated in the title were repealed, and a new section was interpolated requiring persons and corporations having ten or more persons in their employ, liable to pay taxes, to furnish the overseer with their names, and prescribing penalties for their failure to comply therewith. In *Board of Commissioners v. Aspen Mining & Smelting Co.*, 32 Pac. Rep. [Colo.], 717, it was held that the subject-matter of the said interpolated section was not germane to the act it was intended to amend and could not be interpolated therein as an amendment without conflicting with the provision of the constitution of Colorado similar to our section 11, article 3, under consideration. Reed, J., in delivering the opinion of the court, says: "It will be observed that in the title the specific changes are designated,—the amendment of section 29, and the repeal of the four enumerated sections. Had the act been entitled, generally, as an act to amend chapter 95, any amendment germane and pertinent might have been made, but, being specifically limited to the sections designated, the interpolation of a new and different section was not permissible. Any further changes than those designated were precluded by the specific enumeration of those named." The opinion, after citing the cases in support of the doctrine, continues with the following quotation from Cooley, Constitutional Limitations (5th ed.), 179: "As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might, with en-

tire propriety, have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been unnecessarily restrictive. The courts cannot enlarge the scope of the title. They are vested with no dispensing power. The constitution has made the title a conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so."

In *State v. Board of Commissioners*, 41 Pac. Rep. [Nev.], 145, a law entitled "An act to amend an act entitled 'An act for the purchase and preservation of public newspapers printed and published in the several counties of this state,' approved February 1, 1865," to the extent it attempts to regulate the matter of legal advertising and printing, was decided to be in conflict with the provision of the constitution of Nevada requiring that each law enacted by the legislature shall embrace but one subject, which shall be briefly expressed in the title. If the subject of legal advertisement and printing was not included in the title of the original act, and was not germane to the subject-matter, it is obvious that the clause embraced in the amendatory section 91 under review, relating to the creation of a board of fire and police commissioners, is not covered by the title to the act, and is not germane to the section proposed to be amended, but is amendatory of section 13 of article 1 of said chapter 13*a*. We are constrained to hold said amendatory section 91 to be unconstitutional for the reason stated. It follows that the demurrer to the answer must be sustained, and a peremptory writ awarded as prayed.

WRIT ALLOWED.