STATE, EX REL. GRANT G. MARTIN, ATTORNEY GENERAL, RELATOR, V. JOHN J. RYAN ET AL., RESPONDENTS.

FILED DECEMBER 18, 1912.    No. 17,363.

1. **Statutes: ENACTMENT: AMENDMENT.** Where amendments have been made to a bill after its first or second reading in either house, it is not essential or necessary that it be again read at large on three different days in each house in order to comply with section 11, art. III of the constitution.

State v. Ryan.

2. ——: ——: ——. Where a bill has been introduced into the legislature within the time limited by the constitution for the introduction of bills, amendments which are within the general purpose of the bill may be made after that limit has expired.

3. Estoppel: MANDAMUS: STATE AS NOMINAL PARTY. A mandamus proceeding brought by a private citizen cannot estop the state in other litigation from taking a different position from that taken by the relator in the mandamus proceedings, since the state is only a nominal party thereto under section 2, ch. 71, Comp St. 1911.

4. Officers: REMOVAL: POLICE COMMISSIONERS. Members of the board of fire and police commissioners of the city of South Omaha who, together with police officers under their supervision and control, have actual knowledge of frequent violations of the laws of the state by saloon-keepers in selling liquors on election day and Sundays and at prohibited hours of the night, and make no attempt in good faith to suppress such crimes or to enforce the law, are guilty of a wilful refusal to perform their duty.

5. Evidence *held* to support the findings of fact of the referee.

ORIGINAL application in *quo warranto* to oust respondents from the office of fire and police commissioners of South Omaha. *Judgment of ouster.*

*Grant G. Martin, Attorney General, George W. Ayres* and *J. D. Ringer,* for relator.

*Harry B. Fleharty, Smyth, Smith & Schall* and *W. J. Connell,* contra.

LETTON, J.

This is an original proceeding in *quo warranto* against the respondents, John J. Ryan and Joseph Pivonka, fire and police commissioners of the city of South Omaha. Nebraska, brought under the provisions of "An act to provide for the removal by *quo warranto* of derelict officers," commonly known as the "Sackett law." Laws 1907, ch. 87; Comp. St. 1911, ch. 71, secs. 1*a*, 1*b*.

The information sets out at length that there are three members of the board of fire and police commissioners, two of whom are the respondents and the other is the

mayor of the city. It sets forth specifically the statutory duties of the board with respect to the police force of the city, the granting of licenses for the sale of liquors, and the enforcement of the laws of the state and ordinances of the city with respect to the liquor traffic. It then alleges that the respondents have wilfully failed, neglected and refused to enforce the laws of the state of Nebraska in these respects, setting forth specific charges of neglect of duty, and naming the time when and the individual with respect to whose conduct the wilful failure to enforce the laws took place. The prayer is that the right and title of each of the respondents to hold the office of member of the board of fire and police commissioners be declared forfeited and that they be ousted from office. A motion to quash the information was filed, which was overruled. The respondents answered by a general denial, and a denial of the jurisdiction, and of the sufficiency of the facts pleaded to constitute a ground for the relief sought. Afterwards objections were filed to the jurisdiction of the court over the subject matter of the action, for the alleged reason that the term of office of the respondents had expired April 8, 1912, that the offices had been filled at an election held April 2, 1912, and that the board duly elected at such election had qualified and assumed the duties of the office. These were overruled and the Honorable Silas A. Holcomb, formerly chief justice of this court, was appointed referee to take the testimony and report his findings of fact and conclusions of law to the court.

At the time of the hearing before the referee, and before any testimony was offered, the respondents asked leave to file an amended and supplementary answer, which, in addition to the former defenses, pleaded that on April 5, 1910, respondents were elected members of the board for two years and until April 9, 1912; that in 1911 the legislature pretended to amend the statutes so as to abrogate the holding of a city election in the year 1912, and to provide that the officers elected in 1912 should hold their offices until 1913; that the attempted amendments were

void because not made until more than 40 days of the sitting of the legislature had elapsed, and not until the 52d day of the session; that they are not germane to the original bill; and that they were not read at large on three different days in either house of the legislature, and, hence, are unconstitutional and void; that the term of office which respondents were filling at the time the information was filed against them expired by limitation on April 3, 1912, and therefore they ceased to hold the office or the term of office for which they were elected in April, 1910; that afterward certain proceedings were had in the district court for Douglas county whereby a mandamus was issued causing an election to be held on April 2, 1912, for the election of city officers to succeed the respondents; that such an election was held and the respondents were re-elected to their respective offices to succeed themselves for the term of two years commencing on April 9, 1912, and that they qualified therefor and entered upón the duties thereof, and that they are now holding the office by virtue of this later election. The referee permitted the amended and supplementary answer to be filed, but made no ruling as to its effect.

A large number of witnesses were examined in behalf of both the relator and the respondents and much documentary evidence was submitted. When the evidence with respect to the mandamus proceedings was offered, the referee held that "the proffered evidence is not admissible under the issues as at present formed, but, in view of the possible ruling by the court admitting an amendment to the pleadings, will permit the proffered evidence to be made a part of the record."

The referee found that the respondents were elected in April, 1910, and are now members of the board of fire and police commissioners by virtue of such election; that a part of the duties of the board was to keep a record of its proceedings as a public record, that a partial record was kept, but not a full and complete record as required by law; that for the years 1910 and 1911 the board granted

about 80 licenses to different persons to engage in the
saloon business in South Omaha, and that bonds were
required from each in the penal sum of $5,000 conditioned
as provided by law; that 31 of the whole number of bonds
given and approved were signed by sureties who had each
justified as worth $2,500 over and above all his debts, ob-
ligations and exemptions, and on each bond was a printed
form whereon each had sworn that he was not principal
or surety upon any other bond; that of these 31 bonds the
"signers were in almost every instance worthless as sure-
ties, and said bonds so taken, accepted and approved
were wholly and entirely inadequate and insufficient for
the purposes mentioned and contemplated by law; and
that the penal sum mentioned in said bonds could not be
collected from any one or all the sureties who signed said
bonds.    *    *    *    That no investigation was made by said
respondents to ascertain the worth, property and quali-
fications of the sureties on said bonds so taken and ac-
cepted, save such information as was contained in said
justifications so made by each and all of said sureties who
respectively signed said bonds; that the city attorney
advised said respondents as members of the said board of
fire and police commissioners that when bonds were pre-
sented, whereon the sureties had justified or qualified, as
aforesaid, they (the respondents) were not charged with
the duty of making other or further inquiry regarding the
responsibility and efficiency of the sureties so offered on
the respective bonds by them accepted and approved; that
gross carelessness characterized the action of the respond-
ents in approving said bonds and granting licenses to the
respective applicants therein mentioned, and that reason-
able inquiry upon their part would have disclosed the fact
that said sureties were not qualified, and did not possess
property of the value stated subject to execution over and
above debts and exemptions, and that said bonds were
wholly and totally inadequate; that in several instances
said respondents were charged with knowledge of facts
and circumstances which would put a reasonably prudent

and careful person upon inquiry as to the sufficiency of the bonds and the sureties thereon so offered for approval by the different applicants for saloon licenses. I find that the action of the respondents in the acceptance and approval of said inadequate and insufficient bonds and the granting of licenses to the respective applicants was not a wilful failure or refusal to enforce the law with respect to the giving and approval of such bonds within the meaning of section 1731*a*, Ann. St. 1911."

The report then makes specific findings that certain keepers of saloons, giving their names, between May 1, 1910, and October 1, 1911, violated the law by selling and giving away intoxicating liquors during the hours prohibited by law and on election days and Sundays. It continues: "That during the period covered by and mentioned in the information filed in this case, to wit, from May 1, 1910, to October 1, 1911, and while the respondents were acting as fire and police commissioners, there were many and repeated violations of the law with respect to the sale of intoxicating liquors by persons to whom license to sell had been granted, by the sale and giving away of intoxicating liquors at their several places of business between the hours of 8 P. M. and 7 A. M., also on election days and on Sundays. * * * That respondents personally knew of some instances of violations of the law in the above mentioned respect; that many complaints were made to them of alleged violations, and the repeated and continued violations in that regard were such as that they must have known that the law was not being observed by the licensed saloon-keepers, but, on the contrary, was being continually, openly and notoriously violated; that during said period, and at times when illegal sales were made in violation of law, the front doors of the saloons were generally closed and locked, but entrance thereto was obtained through side and rear doors by those that were procuring liquors during such prohibited hours; that the prevailing sentiment among the inhabitants of said city of South Omaha was and is averse to the require-

ments of law prohibiting the sales of liquor between the
hours mentioned and on election days and Sundays, and
favored a policy that permitted the obtaining and pur-
chasing of intoxicating liquors during such prohibited
hours and on Sundays; that the respondents neither
themselves nor through the police department made any
earnest, continued or persistent effort to enforce the law
in regard to such sales or to prevent violations thereof, or
to punish those guilty of such violations, nor did they act
in good faith regarding the enforcement of such laws, nor
did respondents use reasonable effort or actively endeavor
either by themselves or through the police department to
secure the enforcement of such laws, and they failed to
adopt any efficient rules and regulations, or any rules and
regulations whatever, for the purpose of securing the en-
forcement of the law in regard to sales at times prohibited
by law, and to punish violations thereof, to control the
traffic and require observance of the law in that regard
* * * That no continued, persistent or determined effort
was made during said time on the part of the respondents,
or caused to be made by them, to require and compel
licensed vendors to observe the law by abstaining from
the sale of intoxicating liquors after 8 P. M. and before
7 A. M. and on election days and on Sundays, and no
sufficient rules nor regulations were adopted by said fire
and police commissioners with the view of requiring, in-
structing and directing the members of the police force
to prevent such violations and to punish those violating
the law in regard to such prohibited sales; that in regard
to the sales of intoxicating liquors by licensed vendors or
saloon-keepers between the hours of 8 P. M. and 7 A. M.
and on election days and on Sundays during the period of
time mentioned in the information, to wit, from May 1,
1910, to October 1, 1911, respondents have wilfully re-
fused, failed and neglected to enforce the law which it
was their duty to enforce within the meaning of said sec-
tion 1731a." The referee finds as conclusions of law:
"(1) That respondents and each of them have forfeited

their right and title to the office of member of the board of fire and police commissioners of the city of South Omaha now held by them. (2) That a judgment of ouster should be entered removing them and each of them from such office."

Exceptions were filed to the findings of facts adverse to the respondents, and also to the report, for the reason that the referee did not make any findings upon the issues tendered by the amended and supplemental answer. The case has been submitted upon these exceptions, and upon the motion of the attorney general to confirm the report of the referee and for a judgment of ouster.

We will first consider the contention of the respondents that the evidence is not sufficient to sustain a finding that the respondents have wilfully and unlawfully failed, neglected and refused to enforce the laws of the state of Nebraska. It is impossible within the necessary and proper limits of this opinion to set forth the evidence. Each of the respondents testifies that, while he had no personal knowledge of violations of the liquor law, complaints came to him that the laws regulating the liquor traffic were being violated, and that, in consequence thereof, a resolution was passed by the board instructing the chief of police to exert every energy in the pursuit and conviction of offenders against the law. It is shown that this resolution was adopted unanimously and communicated to the chief of police and to the officers under his control and direction. There is evidence in the record that as to some of the saloon-keepers, these respondents endeavored to enforce the law, but the conclusion which we draw from the testimony as a whole is that the findings of fact to which exceptions were taken are amply supported by the testimony. We are also inclined to the view that the evidence as to the approval of bonds would justify a conclusion less favorable to respondents than that drawn by the referee.

Respondents contend that they are not holding the same terms of office that they held when these proceedings com-

menced, and cannot be removed from their present office because of misconduct committed during a prior term. This contention, however, was made and disposed of at a prior hearing in this case (*State v. Ryan,* 91 Neb. 696), and it is unnecessary to repeat what is said in that opinion.

The supplementary and amended answer filed with the referee, however, seeks to raise for the second time this issue upon other grounds, and while, on account of the late day of its tender, we perhaps should not allow it to be filed, we have considered its allegations as a part of the issues. It pleads, in substance, that the amendatory act (laws 1911, ch. 12) was not passed in accordance with the requirements of the constitution, and is illegal and void, and, hence, that respondents' term ended in April, 1912. It is said that the original bill (Senate File No. 93) was introduced within 40 days after the meeting of the legislature provided for that purpose, and that on the 52d legislative day the legislature attempted to amend the bill with respect to the terms of officers of the city, and the time and manner of holding city elections, and that the sections thus sought to be changed were in nowise referred to in the original bill and bear no relation thereto. The bill, as originally introduced, provided for the amendment of certain sections of the charter of South Omaha. The amendments made to the bill provided, in addition, for the amendment of certain other sections of the charter. It is contended that since this court has held that under a restrictive title of an amendatory act the amendment must be germane to the original section proposed to be changed, and since, after the time for the introduction of bills had expired, certain new sections were embraced in this act by amendment, the principles announced in *State v. Tibbets,* 52 Neb. 228, apply, and the amendment is void. We think this result does not follow. The legislature has full control over the passage of bills, and may amend the same and the title to the same at any time permitted by its rules during their progress through the legislature. If

the amendment is germane to the subject of the original bill, and not an evident attempt to evade the constitution, the fact that the time limit for new bills has expired is immaterial. A case directly in point is *Common Council of Detroit v. Schmid*, 128 Mich. 379, in which it is said: "Section 28, art. 4, of the constitution, providing that no new bill shall be introduced in the legislature after the expiration of the first 50 days of the session, does not prevent the substitution of one bill for another after such period, provided the subject matter of the substituted bill is germane to the general purpose indicated by the title of the original bill. Under this rule, a bill purporting by its title to amend a specified section of a city charter, without stating the subject of the section, may have substituted for it a bill to amend a certain other section of the same charter, the subject matter of which has no necessary connection with that of the former section." See, also, *Attorney General v. Stryker*, 141 Mich. 437; *Pack v. Barton*, 47 Mich. 520; *Hale v. McGettigan*, 114 Cal. 112. Furthermore, the language of the opinion in the *Tibbets* case is applicable to the amendment by a new statute of a previously existing law, and not to the amendment in the legislature of a mere bill for an act.

It is also contended that the bill was not read at large in either house on three different days, and that the journals of the house and senate show this to be the fact. The fact that after amendments have been made the bill as amended is not read upon three different days is not material or essential. If this was necessary and each amendment necessitated three separate readings of the bill in each house thereafter, the process of legislation would be interminable. *State v. Liedtke*, 9 Neb. 490; *Cleland v. Anderson*, 66 Neb. 252, 262. As to the other point, we have examined the original enrolled bill and the recorded history, in the office of the secretary of state, of its progress through the legislature. These show that the title to the bill was amended in the senate before it reached the house; that it was sent to the house under the amended

title, and read there the first time under the same; that the house reported to the senate that it had passed the bill under the amended title; that it was enrolled under the proper title, as certified by the joint committee; and that it was certified by the proper officers as having passed under the proper title. The only discrepancy is that the printed house journal recites that the bill under its proper number, but under the original title, was read the third time and passed. It is apparent that the statement in the printed journal that the bill was read in the house for the third time by its original title is erroneous. Considering the whole history, and applying the presumptions of validity, we are satisfied that the bill followed the constitutional route. *State v. Moore*, 37 Neb. 13.

It is also urged that the state of Nebraska is estopped to urge that respondents' term of office did not expire in April, 1912, for the reason that certain proceedings were had, entitled the State of Nebraska, ex rel. Thomas Hoctor and August Miller, v. Patrick J. Trainor and Frank H. Good, the Mayor and City Clerk of South Omaha, to compel the calling of an election on April 2, 1912, in the city of South Omaha for the election of city officials, including members of the board of fire and police commissioners. As a result of the suit a peremptory writ was issued commanding the calling and holding of the election. At this election the respondents were elected to a term of office beginning on the 9th day of April, 1912. Respondents argue that, since the state went into the district court alleging that the terms of the city officers elected in April, 1910, expired in April, 1912, and obtained the writ mentioned, it is now estopped to say that the respondents are still holding the term for which they were elected in 1910. This position is untenable. Under the statutes of this state, any citizen may sue out writs of mandamus without application to the prosecuting attorney. Comp. St. 1911, ch. 71, sec. 2. This being so, we can see no basis upon which an estoppel against the state

can arise. We have not been cited to any authority so holding, and are satisfied that none such can be found.

It is insisted that the information does not state a cause of action for a wilful failure to enforce the saloon closing laws. The gist of the argument on this point is that, under the statute, it is not the duty of the board of fire and police commissioners to file complaints or to prosecute violations of the law, and that such matters are under the sphere of duty of the mayor and chief of police. But the charter provides: "The board of fire and police commissioners shall have the power, and it shall be the duty of said board to appoint a chief of police, and such other officers and policemen, all of whom shall be electors of such city, to the extent that funds may be provided for by the mayor and council, to pay their salaries, and as may be necessary for the proper protection and efficient policing of the city, the chief of police and all other police officers and policemen shall be subject to removal by the board of fire and police commissioners under such rules and regulations as may be adopted by said board, whenever said board shall consider and declare such removal necessary for the proper management or discipline or for the more effective working or service of the police department. * * * It will be the duty of said board of fire and police commissioners to adopt such rules and regulations for the guidance of the officers and men of said department, for the appointment, protection, removal, trial, or discipline of officers or policemen as said board shall consider proper and necessary." Section 8262, Ann. St. 1911. It further provides: "The chief of police shall have the supervision and control of the police force of the city, and in that connection he shall be subject to the orders of the board of fire and police commissioners, and all orders relating to the direction of the police force shall be given through the chief of police, or, in his absence, to the officer in charge of the police force." Section 8263, Ann. St. 1911.

In *State v. Donahue,* 91 Neb. 311, where it was sought

to remove the chief of police of Omaha under like proceedings, and where the provisions in the charter of the city were almost identical in respect to the powers and duties of the board of fire and police commissioners and the chief of police, it was held that the chief of police was not subject to removal, even though palpable and open infractions of law were proved, for the reason that he was carrying out the policy of his superiors, the board of fire and police commissioners. The opinion says: "He was appointed by the mayor and police board. He was removable by them at their pleasure. They had all of the information in regard to existing conditions that the respondent had. He knew what had been determined by his superiors to be a sufficient and proper enforcement of the law. He knew that if he violated their policy they might be expected to immediately remove him in favor of one who would obey instructions. * * * If he in good faith believed that it was his duty to take such action in regard to the enforcement of the law as the mayor and board of fire and police commissioners prescribed for him he may have been mistaken, but it does not clearly appear that he acted wilfully." In the concurring opinion of the chief justice we find this: "Questions of this kind must be solved by a consideration of the facts in each particular case. If the mayor and police board, admittedly the superiors of the chief of police, knowingly and wilfully stand in the way of the enforcement of the law by their subordinate officers, it seems clear that they should not escape, and the whole of the penalties of the law inflicted upon their subordinates." The chief of police is not liable under this decision (as to which the writer dissented). If his superiors are likewise invulnerable to assault for failure to enforce the law, as respondents contend, the remedial statute under which these proceedings are brought may as well be repealed.

The evidence convinces us that the conduct of the respondents was such as to raise the bulwark of the *Donahue* case against every attempt by the state to remove the

police officers of the city for such derelictions of duty as charged here, and that the information is sufficiently specific in the respect mentioned.

On the whole case, we are of the opinion that the report of the referee is eminently fair and just to the respondents, giving them the benefit of every doubt, and giving full weight to all the evidence produced in their behalf. We are also satisfied that the evidence is ample to sustain the conclusions of law. The exceptions are overruled, the report of the referee confirmed, and judgment of ouster rendered as prayed.

JUDGMENT OF OUSTER.