STATE, EX REL. SCHOOL DISTRICT OF THE CITY OF LINCOLN, APPELLEE, v. SILAS R. BARTON, AUDITOR, APPELLANT.

FILED APRIL 20, 1912.   No. 17,487.

1. **Statutes**: AMENDMENT: CONSTITUTIONAL PROVISION. "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." Const., art. III, sec. 11. This provision makes inviolable the rule governing legislative bodies, that no proposed subject different from that under consideration shall be admitted under color of amendment. *Miller v. Hurford*, 11 Neb. 377.

2. ——: ——: ——. The provision of the constitution is directed against surreptitious legislation of which the members of the legislature and the public have no notice.

3. ——: ——: ——: TITLE OF ACT. Where the title to a bill is to amend an existing act, or a section thereof, no amendment

is permissible which is not germane to the subject matter of the original act or section indicated.

4. ——: ——: ——: ——. The title should clearly indicate the legislation embraced in the bill. While the requirements of the clause of the constitution under consideration are mandatory, they are not to be enforced in such a manner as to cripple legislation. The title to a bill may be general, and it is not essential that it specify every clause in the proposed statute.

5. ——: ——: VALIDITY OF ACT. Where a statute was passed in 1881, and in 1883, under an act with an appropriate title, a section in said statute was amended, and in 1893, under an act with a proper title, said section was again amended so that it contained matter clearly within the title of the original bill, and in 1897 said section as amended was again amended, under an act with a proper title and concerning matters clearly within the title of the original bill, and touching the matter contained in the section as amended in 1893, and in 1901 said section as amended was again amended, under an act with a proper title and touching the subject matter contained in the section, and in 1903 said section as amended in 1901 was again amended, under an act with a proper title and touching the subject matter contained in said section at that time, and in 1911 said section was again amended, under an act with a proper title and touching the subject matter in said section at that time, held that the said section as it stood when last amended was valid.

6. Schools and School Districts: BONDS: VALIDITY. It is further held that section 24, subd. XIV, ch. 79, Comp. St. 1911, authorized the issue and registration of the school bonds in question, and that the same were properly issued and are entitled to registration.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. Affirmed.

Grant G. Martin, Attorney General, for appellant.

Frank E. Bishop, contra.

E. F. Pettis, amicus curiæ.

HAMER, J.

This is an appeal by the auditor of public accounts

from the judgment of the district court for Lancaster county directing that a mandamus issue to Silas R. Barton, as auditor of public accounts of the state of Nebraska, compelling him to register the school bonds of the school district of the city of Lincoln, amounting to $350,000. They were issued under section 24, subd. XIV, ch. 79, Comp. St. 1911. The attorney general urges this court to hold that said section 24 is unconstitutional and void for the reason that as it was at first enacted it was a limitation upon the amount of the aggregate annual tax which might be levied upon the property of the school district; that the amendatory act of 1893, providing for calling an election and voting bonds, was not germane to the subject contained in the original section, and that the act has not since been properly amended; that the amendatory acts did not contain sections 2, 3, 4 and 5, which are thereby sought to be amended, and that the same were not repealed by said amendatory acts.

It is claimed that the propositions submitted were: (1) The issuance of bonds for a high school building; (2) the question as to whether said high school building should be located on its present site; (3) the question as to whether the said high school building should be located on ground commonly known as the "Davenport tract;" (4) the question as to whether or not one grade high school building should be located in a certain place; and (5) the question as to whether an annex to another grade school building should be located at a certain place.

It is also claimed that the election was illegal and void because the school district takes in territory beyond the limits of the city and the school election was held at the time of the regular city election, and that no provision was made in the territory outside of the city limits within the school district where the voters of said outside territory might appear and cast their votes, and that the only places where the voters might appear and cast their ballots at said school election was in the city of Lincoln at the usual and regular voting places for the said election.

It is also claimed that the election was illegal and void because the school authorities published the notice of the election in a weekly paper called the "Trade Review," and also put one insertion in each of the daily papers, the Lincoln Daily Star and the Nebraska State Journal, but did not publish said notice of election in said daily papers for at least 20 days.

The first contention is that section 24, subd. XIV, ch. 79, Comp. St. 1911, is not valid as it at present exists, and this is most strenuously insisted upon.

It is claimed by the attorney general, and Mr. Pettis, who appears as *amicus curiæ,* that when the legislature in 1893 sought to amend section 24, subd. XIV, ch. 78, laws 1881, it entirely ignored so much of section 11, art. III of the constitution, as required (1) that "no bill shall contain more than one subject, and the same shall be clearly expressed in its title. (2) And no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." Mr. Pettis, as *amicus curiæ,* says in his argument: "It may be said that to a limited extent they observed the requirement that the subject should be expressed in the title." But he claims the attempt was only a partial observance of the constitutional requirement, either in the amendment of 1893 or in any subsequent amendment up to and including the amendment of 1911 (laws 1911, ch. 123). And the attorney general also contends that, "when the title of an act is to amend a particular section of a statute the proposed amendment must be germane to the subject matter of the section sought to be amended, or it will be void"—citing *Miller v. Hurford,* 11 Neb. 377.

It is necessary to give a history of the legislation by which the section was obtained. After many amendments it now reads: "That the aggregate school tax, exclusive of school bond taxes, shall in no one year exceed thirty-five mills. But the board of education may borrow money upon bonds which they are hereby authorized and em-

powered to issue, bearing a rate of interest not to exceed six per cent. per annum, payable annually or semi-annually at such place as may be mentioned upon the face of the bonds; which loan shall be paid and reimbursed in a period not exceeding thirty years from the date of said bonds. Provided, that no bonds shall be issued nor the question of issue submitted to the voters without the consent of two-thirds of the members of the board of education, and be offered in the open market and sold to the highest bidder for not less than par value of the dollar; and provided further that no bonds shall be issued by the board of education without first submitting the proposition of issuing said bonds at an election called for that purpose, or at any regular election, notice whereof shall be given for at least twenty days in one or more papers published within the district to the qualified voters of the district, and if a majority of the ballots cast at such election shall be for issuing bonds, said board may issue bonds in such amount as may be named in the election notice. Provided, that in cities of the first class having over twenty-five thousand inhabitants, if such question is submitted at a special election, it shall require to carry the same a two-thirds majority of the votes cast at said election." Comp. St. 1911, ch. 79, subd. XIV, sec. 24.

In the year 1881 the legislature passed a comprehensive general statute entitled "An act to establish a system of public instruction for the state of Nebraska." Laws 1881, ch. 78 (Comp. St. 1881, ch. 79). It contained 14 subdivisions. The fourteenth subdivision was under the heading "Subdivision XIV. Schools in Cities," and the particular section in controversy was section 24 of the fourteenth subdivision of the act, in which subdivision there were 29 sections. Each subdivision was sectionized and put under an appropriate heading.

The first section of said subdivision 14 provided, among other things, that each incorporated city, or those hereafter incorporated as such, having a population of more than 2,000, including such adjacent territory as now is, or

hereafter may be, attached for school purposes, shall constitute one school district and be known by the name of "School District of ........ City." This section was put in the Compiled Statutes of 1881 under the subtitle of "Subdivision XIV. Schools in Cities," and under the general title "Chapter 79. Schools." At that time there were in the Compiled Statutes of 1881 15 subdivisions under chapter 79 covering the Nebraska system of public instruction. At present in the Compiled Statutes of 1911, under chapter 79, there appear to be 19 subdivisions. Said original section 24, subd. XIV, Comp. St. 1881, was then as follows: "That the aggregate school tax shall in no one year exceed one per cent. upon all the taxable property of the district."

Section 22, subd. XIV of said act, authorized the board of education, if they found an indebtedness existing against the school district in the form of bonds issued for a valuable consideration in accordance with the law, and the validity of which had not been called in question, or, being called in question, had been declared by the courts of last resort to be valid, to issue to the holders thereof, who should surrender the same to the board, *other bonds* in like amount of the same tenor and effect, after the payment of principal and interest, as the bonds so surrendered.

Said subdivision XIV, ch. 78, laws 1881, was carried into the Compiled Statutes of 1881 in its entirety, and was designated in said statutes as subdivision XIV, ch. 79, each section seemingly retaining its original number (sections 1-29). At that time the educational system of the state was included under "Chapter 79. Schools."

The legislature of 1883 passed a law (laws 1883, ch. 72) entitled as hereinafter set forth. This was an amendment of many sections of different subdivisions, and made section 24, subd. XIV, read: "That the aggregate school tax shall in no one year exceed two per cent. upon all the taxable property of the district." The change was the striking out of the words "one per cent." in the original

and putting in their place "two per cent." in the amendment. Laws 1883, ch. 72, sec. 25 (Comp. St. 1883, ch. 79, subd. XIV, sec. 24).

Section 24, as amended by the legislature of 1883 as aforesaid, was carried into the Consolidated Statutes of 1891 as section 3722. It was placed under "Subdivision XIV. Schools in Cities." The whole legislation of the state of Nebraska touching schools appeared in this book under the general head "Chapter 44. Public Instruction. Schools."

In 1893 the legislature passed a law (laws 1893, ch. 31) entitled "An act to amend sections 3706, 3721 and 3722, of subdivision XIV, chapter 44 of the Consolidated Statutes of Nebraska, and to repeal the original sections amended." This seems to have contained the first provision towards raising money for school districts for future use by the issue of bonds. Section 3722, as amended by this act, was carried into the Compiled Statutes of 1893 (ch. 79, subd. XIV, sec. 24), and this same amendment was also carried into the Compiled Statutes of 1895 (ch. 79, subd. XIV, sec. 24), and was made to read: "That the aggregate school tax shall in no one year exceed two per cent., and in cities of the first class having over twenty-five thousand (25,000) population the school tax shall not exceed fifteen (15) mills upon all the taxable property of the district, but the board of education may borrow money upon the bonds, which they are hereby authorized and empowered to issue, bearing a rate of interest not exceeding six (6) per centum per annum, payable annually or semi-annually, at such place as may be mentioned upon the face of such bonds; which loan shall be paid and reimbursed in a period not exceeding thirty (30) years from the date of said bonds; provided, that no bonds shall be issued nor question of issue be submitted to the electors without the consent of two-thirds (⅔) of the members of the board of education, and be offered in open market and sold to the highest bidder for not less than par value on each dollar; and, provided further, that

no bonds shall be issued by the board of education without first submitting the proposition of issuing said bonds, at an election called for that purpose, or at any regular election, notice whereof shall be given for at least twenty (20) days in one or more daily papers published within the district, to the qualified voters of the district, and if a majority of the ballots cast at such election shall be for issuing bonds, said board may issue bonds in such an amount as shall be named in their election notice; provided, that in cities of the first class having over twenty-five thousand (25,000) inhabitants if said question is submitted at a special election it shall require to carry the same a two-thirds ($\frac{2}{3}$) majority of the votes cast at said election."

Section 24, as it appeared in the same numbered section in subd. XIV, ch. 79, Comp. St. 1893, and the Compiled Statutes of 1895 into which it was also carried, contained the provisions concerning the issue of bonds.

This amendment of section 3722, subd. XIV, ch. 44, Consolidated St. 1891, is claimed to be unconstitutional and void because, as it is alleged, the amendment was not germane to the subject matter of said section 3722, being section 24 referred to. It will be seen that the legislature attempted to confer upon the board of education the power to borrow money upon the bonds of the school district upon the terms and conditions fixed in the section. It is claimed by the attorney general that section 24 has remained substantially the same up to the present time, so far as the power which it attempted to confer upon the board of education to borrow money and issue bonds.

In 1897 said section 24 was amended under the title, "An act to amend section 24, chapter 79, subdivision XIV of the Compiled Statutes of 1895, to provide for the exclusion of school bond taxes in the computation of the aggregate school taxes under the provisions of this act, and to repeal section 24, chapter 79, subdivision XIV of the Compiled Statutes of 1895." Laws 1897, ch. 70.

The legislature of 1901 passed a law (laws 1901, ch. 69)

entitled "An act to amend section 24 of subdivision XIV, of chapter 79 of the Compiled Statutes of Nebraska." Section 24, as amended, was carried into subdivision XIV, ch. 79, Comp. St. 1901.

In 1903 the same section was amended under the title "An act to amend section 24 of subdivision XIV, chapter 79, Compiled Statutes of Nebraska, and to repeal said original section." Laws 1903, ch. 94.

In 1911 the legislature passed a law (laws 1911, ch. 123) entitled "An act to amend section 24, subdivision XIV, chapter 79 of the Compiled Statutes of Nebraska for 1909 (Cobbey's Ann. St. 1909, sec. 11814), relating to aggregate levy of school taxes in incorporated cities and villages, fixing the limit of said levy at thirty-five mills, and to repeal said original section as it now exists." Under this title the legislature gave us the law as it is today, being the one under which the relator proceeded to issue the bonds, and which we have heretofore set forth. It would seem that the provisions of the amendments of section 24, ch. 123, laws 1911, so far as the same relate to the borrowing of money and the issuance of bonds, are substantially the same as were contained in the acts of 1893, 1897, 1901, and 1903.

The amendment made in 1893 provided that the board of education might borrow money upon the bonds of the school district bearing a certain rate of interest not exceeding 6 per cent. per annum, fixed the time for which the loan should be made at not exceeding 30 years, and provided that no bonds should be issued unless the question of their issue should first be submitted to the electors with the consent of two-thirds of the members of the board; that the bonds should be offered in the open market and sold to the highest bidder for not less than par value; also that no bonds should be issued without submitting the proposition of issuing the same at an election called for that purpose, or at any regular election, of which notice shall have been given for at least 20 days by publication in one or more daily papers published within

the district, and providing, further, that in cities of the first class having over 25,000 inhabitants the said question should be submitted at a special election, and should require a two-thirds majority of the votes cast at such election to carry the proposition.

An examination of section 24 shows that it provided that the aggregate school tax in one year should not exceed 1 per cent. upon all the taxable property of the district. As it was amended by the act of 1883 it provided that the aggregate school tax in one year should not exceed 2 per cent. upon all the taxable property of the district. The act as originally passed, and as it was amended in 1883, clearly provided a limitation upon the aggregate school tax to be levied in any one year upon all the taxable property of the district.

In 1893 the section 24 was amended, the act changing the limitation of taxation for general school purposes from 2 per cent. to 15 mills, and, the same being within the title, was valid legislation, and, in lieu of the 5 mills reduction, the act provided that the board might borrow money and issue bonds therefor under the title which was to amend section 24 which then contained a limitation of 2 per cent. upon the power of taxation; the legislature changed the manner of raising the amount so limited, providing that a part thereof might be raised as theretofore had been done, and that the remainder thereof might be raised by issuing bonds in lieu of a direct levy.

The title of the act of 1883 (laws 1883, ch. 72) was "An act to amend section 4, subdivision 1, sections 4, 13 and 14, subdivision 2, section 10, subdivision 3, sections 4, 11, 16 and 17, subdivision 4, sections 3, 4 and 12, subdivision 5, sections 1, 2 and 3, subdivision 7, sections 5 and 6, subdivision 10, and sections 1, 3, 8, 12, 13, 15, 18, 24 and 26 of subdivision 14 of an act entitled 'An act to establish a system of public instruction for the state of Nebraska,' approved March 1, 1881, being chapter 79 of the Compiled Statutes of 1881."

Section 24 of subdivision XIV is the particular section

involved. Could the legislature have been deceived and
misled by the act in question? By looking at the title, it
will be apparent that the act amends 26 different sections
of an act of at least 14 different subdivisions, 8 of which
are amended by the act. The member of the legislature
who voted for or against this bill knew, if he read the
title, that it proposed to amend 26 sections in 8 subdi-
visions of an act which contained at least 14 subdivisions;
and he knew that the act sought to be amended was an act
to amend the system of education laws that had been es-
tablished for the state. It was further part of the title
that the act had been "approved March 1, 1881, being
chapter 79 of the Compiled Statutes of 1881." By looking
at chapter 79 of the Compiled Statutes of 1881 we find
the heading "Chapter 79. Schools." There were 15 sub-
divisions of this chapter 79 under the heading "Schools"
in the Compiled Statutes of 1881. The particular section
24 was carried into the Compiled Statutes of 1881 along
with 28 other sections forming the fourteenth subdivision
of the school law. These sections, including 24, were all
parts of the system of education up to that time provided
for our state by the several legislatures which had enacted
laws pertaining to it. The 14 subdivisions of the act of
1881, including the particular section 24 under considera-
tion, were carried into the Consolidated Statutes of 1891
and placed in chapter 44, under the heading "Public In-
struction. Schools." Section 24 (p. 808) reads: "Sec-
tion 3722. That the aggregate school tax shall in no one
year exceed two per cent. upon all the taxable property of
the district." The Consolidated Statutes of Nebraska
appear to be certified by John C. Allen, secretary of state
of the state of Nebraska, December 15, 1891, and it is
also certified to by J. E. Cobbey, who appears to have
been appointed to compile, annotate, edit, and publish all
the general laws of the state then in force, and he does
"hereby certify that the laws contained in this volume are
true and accurate copies of the originals, as shown by the
Revised Statutes of 1866, and the original rolls now on

file in the office of the secretary of state." The Consoli-
dated Statutes of Nebraska became an authorized com-
pilation supposed to contain all the laws of the state of
Nebraska, and when the legislature referred to chapter
44, Consolidated Statutes of Nebraska, it referred to
the system of public instruction provided for Nebraska
by preceding legislatures, and it would be so recognized
by the state government, by the school district officers,
and by subsequent legislatures. The particular section
3722 of the Consolidated Statutes of Nebraska (Comp.
St. 1881, ch. 79, sec. 24) was amended along with sections
3706 and 3721 which were carried along with it, and all
three of the sections as originally existing were repealed.
Section 4, ch. 31, laws 1893, provides that "sections 3706,
3721, and 3722, of subdivision XIV, chapter 44 of the
Consolidated Statutes of Nebraska as now existing be and
the same hereby are repealed." The sections had all be-
come part of Nebraska's educational system of laws, and
they were amended and repealed, and it would seem that
they were so amended and repealed by a statute which
could have deceived no one. The amendment was not an
amendment alone of a section. The whole of chapter 44
of the Consolidated Statutes of Nebraska is devoted to
the elaboration of that system, and the act in question was
an amendment, as it would seem, not of the particular
section alone, but of the fourteenth subdivision of chapter
44 of the Consolidated Statutes of Nebraska, and it
amended sections in other subdivisions, as stated in the
act, and indicated by the title. It was this amendment
that provided for the issue of school district bonds, and
which found section 24 part of the educational system of
Nebraska, and amended it by attempting to provide for
the issue of bonds.

It is claimed by counsel that the rule laid down by this
court in *Miller v. Hurford*, 11 Neb. 377, disposes of the
case and prevents the registration of the bonds. Judge
MAXWELL delivered the opinion of this court in that case.
In the opinion he says: "But an amendment must be

germane to the subject matter of the *act or section* to be
amended." The purpose of the constitutional inhibition
is not to be lost sight of. Judge MAXWELL did not lose
sight of it. He calls attention to that provision of our
constitution which says, among other things: "No bill
shall contain more than one subject, which shall be
clearly expressed in its title." He says of this provision,
that it makes "inviolable the rule governing legislative
bodies, that 'no proposition or subject different from
that under consideration shall be admitted under color
of amendment.'" He says: "Experience has shown
that, in the absence of constitutional restrictions, the
rule at times is liable to be overthrown, and objection-
able and pernicious legislation is the result." He con-
tinues: "To guard against this evil, our constitution pro-
hibits more than one subject being *embraced in a bill.*"
It would seem that there can be no reasonable objection to
the effect of the language used by Judge MAXWELL in the
body of the opinion. The constitutional inhibition against
more than "one subject being embraced in a *bill*" cannot
be too strenuously insisted upon or too earnestly em-
phasized, because the purpose of the constitution, which is
the recorded will of the people and which restricts the
action of the legislature, is to prevent surreptitious legis-
lation. Experience has demonstrated that legislators
sometimes act in a clandestine and deceptive way. The
purpose of the constitution is to confine legislative action
to one subject, and that only the subject then under con-
sideration, and if that subject is indicated by the title of
the act which is being amended, or if the proposed amend-
ment is clearly within the subject matter indicated by the
title or section, then can there be any deception of the
members of the legislature?

Because of the importance of the decision in *Miller v.
Hurford,* 11 Neb. 377, it may be well to examine that
case. The action was brought to foreclose certain alleged
tax liens. The plaintiff alleged the purchase of five acres
of ground for the taxes due thereon for certain years, and

27

that as a purchaser of said land he had paid other taxes, which he specified, the total amounting to $1,141.21. On the trial of said case there was a decree for the sum of $1,688 in favor of the plaintiff. Redick and Connell, the defendants, appealed to this court. This court determined that the plaintiff was entitled to a decree for the money actually paid by him in purchasing said lands at said tax sale, and for taxes necessarily paid upon said lands, together with interest at the rate of 12 per cent. per annum, and that the lands should be sold as upon foreclosure of a mortgage, and the proceeds applied to the payment of the amount found due and the costs. The title of the act of 1871 (laws 1871, p. 81), referred to and under which the foreclosure proceeded, is as follows: "An act to amend sections fifty, fifty-one, seventy-one, and one hundred and five of an act entitled 'An act to provide a system of revenue,' approved, February 15, 1869, and to make further provisions for collecting revenue." The title of the act does not cover the sale of land for the nonpayment of taxes. Concerning section 51 above mentioned, Judge MAXWELL says: "The subject matter of section 51 is to make taxes upon real property a perpetual lien thereon against all persons and bodies corporate except the United States and this state. Any amendment to the section in relation to the lien or mode of enforcing it is valid. But extraneous matter not relating to the subject of the section is in no sense an amendment, is within the inhibition of the constitution and void." The thing done by this court in *Miller v. Hurford* was to declare the taxes paid a lien upon the land and to decree the sale of the land to pay such lien as upon foreclosure of a mortgage. The plaintiff had a lien upon the land for the taxes. Speaking for this court, Judge MAXWELL foreclosed the lien as contemplated by the amendment to the section, but he did not allow the 40 per cent. per annum rate of interest provided for by the act. He only allowed interest at 12 per cent. per annum. In view of what he said and did, he probably considered, along with the other

members of this court, that the penalty part was uncon-
stitutional.

It would seem that there should be a broad construction
of the constitutional restriction that would not defeat
the reasonable intent of the legislature. Of course, the
intent of the legislature in all such cases is to amend the
act. The constitution says nothing whatever about amend-
ing the *sections*. The real thing to be guarded against is
the deception of one member of the legislature by another,
or the deception of many members of the legislature by
some one who draws a bill intended to deceive the mem-
bers, or has such a bill presented and thereby does de-
ceive them and induces them to pass an act which is sur-
reptitious in its nature and perhaps vicious. Any amend-
ment of the section ought to be such an amendment as
might have been made to the act at the time of the con-
sideration of the original bill. The constitution does
not forbid the amendment of the act. It is always to be
expected that first efforts will be ineffectual, and that it
will be necessary to prepare and pass amendments. The
constitution is only directed against surreptitious legis-
lation of which the members of the legislature and the
public have no notice. Suppose when an amendment to
a section is offered it is held to relate to such subject
matter only as might have properly been considered at
the time the original bill was under consideration by the
legislature, and it was clearly within the title of such
original bill and the general scope and purpose of the act,
or within the language of the section, then would there be
any wrong done to the public by the passage of the
amendment?

An examination of the session laws will show that a
practice has grown up in the legislature of referring to
the particular section which it is intended to amend as
section — of the Compiled Statutes of such and such a
year, giving it, or Cobbey's Annotated Statutes, or the
Consolidated Statutes, as the case may be, altogether
omitting the title of the original act. The thing done by

these legislators in referring to the section by its number is not prohibited, and it is perhaps only done for convenience, but it is assumed that a wrong is intended if anything else is put in the bill except matter of exactly the same kind as that contained in the section. It would seem to be unfair to the legislature to assume that it intends to pass surreptitious or clandestine acts for the purpose of deception, when its action is limited to such matters as are clearly indicated by the title of the original act, or the language of the section to be amended. Suppose we apply this reasoning to the instant case. The title of the act was "An act to establish a system of public instruction for the state of Nebraska." Laws 1881, ch. 78. If the amendment made to the original section 24 was one that might fairly have been contemplated under the title of the original act, has any harm been done to any one by the amendment of that act so as to enable the boards of the school districts to issue bonds and to borrow money and build school houses in accordance with the necessities of the people and their children, and according to the vote of the electors of the school district?

One of the constitutional restrictions is that "no bill shall contain more than one subject and the same shall be clearly expressed in its title." In *Kansas City & O. R. Co. v. Frey*, 30 Neb. 790, it was said, concerning this provision, that no bill shall contain more than one subject, this clause of the constitution "was never designed to place the legislature in a strait-jacket and prevent it from passing laws having but one object under an appropriate title." Concerning the rule as applied, Commissioner IRVINE, in *Trumble v. Trumble*, 37 Neb. 340, said: "Provided the object of the law be single the whole law may be embraced in a single enactment, although it may require any number of details to accomplish the object."

In *Smails v. White*, 4 Neb. 353, the act then under consideration was held to be unconstitutional because it undertook to shorten the time within which the transcript must be filed in the appellate court on taking an appeal

from the judgment of the probate judge or justice of the peace, and, second, to fix the time for filing the petition after the appeal and time for making up the issues in the case. It was held that there were two subjects.

In *State v. Lancaster County,* 6 Neb. 474, Judge GANTT in delivering the opinion of the court, among other things, said: "Notwithstanding the very restrictive terms of the title to the act in question, it not only contains provisions in regard to township organization, but it also provides for county organization and defines its corporate powers; it determines the number of county officers, defines their duties, provides for their election, and limits the terms of their respective offices, and it also materially amends and changes the general revenue laws."

In *State v. Lancaster County,* 17 Neb. 85, it is said by the attorney general that a provision in an amendatory act repealing an act not connected with the subject of the amendment is declared void. An examination of the case cited shows that the act was entitled "An act to amend an act entitled 'An act to provide for the registry, sale, leasing, and general management of all lands and funds set apart for educational purposes, and for the investment of funds arising from the sale of such lands,' being art. I, ch. 80, Compiled Statutes. *Also to repeal article III of said chapter 80."* The court said: "Article III of chapter 80 is no part of the act amended, nor does it relate to subjects embraced either in the original act or as amended." An examination of the Compiled Statutes of 1881 and 1883 shows that the subject referred to in article III of chapter 80 is "refunding taxes," an entirely different subject.

In *City of Tecumseh v. Phillips,* 5 Neb. 305, the act under consideration undertook to exempt cities which had collected moneys from licenses for the sale of intoxicating liquors, and which had expended the same, from paying the money over to the county treasurer. By the section of the act in question they were declared "hereby exonerated from any and all liability therefor." The

title of the act in no way indicated this section. It was held that the section was void. The case of *White v. City of Lincoln,* 5 Neb. 505, presented the same question as in the former case of *City of Tecumseh v. Phillips.*

In *Burlington & M. R. R. Co. v. Saunders County,* 9 Neb. 507, the title of the act to be considered was "An act to amend 'An act to provide for the registration of precinct or township and school district bonds.'" This act is also contained in the laws of 1875, p. 185. It was sought to change the former statute by this amendment so as to read: "It shall be the duty of the board of county commissioners in each county to levy annually upon all the taxable property in each precinct or township and school district in such county a tax sufficient to pay the interest accruing upon any bonds issued by such precinct, township, or school district, and to provide a sinking fund for the final redemption of the same; such levy to be made with the annual levy of the county, and the taxes collected with other taxes, and, when collected, shall be and remain in the hands of the county treasurer a specific fund for the payment of the interest upon such bonds, and for the final payment of the same at maturity." It was held that the foregoing matter was void because of the fact that the title only provided for the registration of the bonds.

In *State v. Tibbets,* 52 Neb. 228, the second point of the syllabus reads: "Where the title to a bill is to amend an *existing act,* or a section thereof, no amendment is permissible which is not germane to the subject matter of the *original act or section indicated.*" Judge NORVAL, delivering the opinion of the court in the same case, said: "It has been uniformly decided that the provision of the constitution is mandatory, and that the courts will not declare a statute unconstitutional unless it is clearly so." He also said: "The purpose of the constitutional provision * * * is to give notice, *through the title of the bill,* to the members of the legislature and the public, of the subject matter of the projected law,—in other words,

that the title should clearly indicate the legislation embraced in the bill." He also said: "While the requirements of this clause of the constitution are mandatory, they are not to be exactingly enforced, or in such a manner as to hamper or cripple legislation. The title to a bill may be general, and it is not essential that it specify every clause in the proposed statute."

In *Ives v. Norris*, 13 Neb. 252, it was held that the title to "An act regulating the herding and driving of stock" was not broad and comprehensive enough to sustain a provision giving damages for the castration of animals. In that case there was an action to recover the value of a grade Durham bull alleged to have been castrated by the plaintiff. On a trial in the county court there was a verdict and a judgment for the defendant. The case was taken to the district court on error and the judgment affirmed. The section under consideration provided: "No stallion over the age of 18 months, nor any Mexican, Texan or Cherokee bull over the age of 10 months, nor any Mexican ram over the age of 8 months, shall be permitted to run at large in the state of Nebraska." The remainder of the section provided that the owner or person in charge of such animals was prohibited from permitting them to run at large, and that such person might be fined, and further provided: "It shall be lawful for any person to castrate or cause to be castrated any such animal running at large." Concerning this act, it was held that the title of the act must express the subject of the bill; also, that, "if the bill have but one general object which is fairly expressed in the title," it will be sufficient—giving many citations.

In *Ex parte Thomason*, 16 Neb. 239, it was held that "an act to prevent the fraudulent transfer of personal property" was too restrictive in its title to include legislation making it a crime to remove mortgaged property out of the county.

In *Holmberg v. Hauck*, 16 Neb. 337, it was held that, under the title "An act to provide for the organization,

government, and powers of certain cities," the legislature could not invest police courts with a concurrent and co-extensive jurisdiction with county courts in ordinary civil cases.

In *Touzalin v. City of Omaha*, 25 Neb. 817, it was held that the title "An act to incorporate cities of the first class and regulating their duties, powers and government" did not permit a provision in the act forbidding the granting of injunctions to restrain the levy and collection of a special tax or the assessment to pay the cost of a city improvement.

In *State v. Holcomb*, 46 Neb. 612, it was held that section 5, ch. 66, laws 1895, providing for the leasing of convict labor, was in conflict with the clause of the constitution requiring the subjects of acts to be clearly expressed in their title.

In *Fish v. Stockdale*, 111 Mich. 46, the title of the act was "An act to amend section 1 of act No. 159, session laws of 1891, entitled 'An act to regulate the taking and catching of fish in the inland *waters* of this state.'" The actual title to the act amended read as follows: "An act to regulate the taking and catching of fish in the inland *lakes* of this state." It will be seen that there was no such act as the one described in the title to the amending act. In the act to be amended occurs the word "lakes," and in the amendatory act the title of the act to be amended contains the word "waters" in the place of "lakes." The Michigan court held that the title gave no notice to the legislators or to the people that the bill provided that the provisions of the original act should be extended to other subjects.

In *New York & G. L. R. Co. v. Inhabitants of Montclair*, 47 N. J. Eq. 591, there was an appeal from a decree overruling a demurrer to a bill. The bill was filed by the inhabitants of the township of Montclair to compel the railroad to construct a bridge across a cut alleged to impede the public travel along a public road within the township. One of the questions involved was the consti-

tutionality of the act under which the action of the court was invoked. The title of the act was "An act entitled 'A supplement to an act entitled "An act to authorize the formation of railroad corporations and regulate the same," approved April 2, 1873,' which supplement was approved March 31, 1882." The court said: "It is perceived that, while the act does not purport to be a supplement to the supplement of March 31, 1882, its effect is to leave the impression that it is a supplement to the earlier supplement. Any person reading the title to the act would conclude that the subject of the statute was the same as that involved in the act of March 31, 1882." The court then said that the act last mentioned "deals with a subject entirely foreign to the subject matter of the present statute. The act of March 31, 1882, * * * deals with the reduction of the capital stock of railroad companies under certain conditions. It is too obvious for argument that the title was entirely misleading. * * * For this reason the act is void."

Along the same line is the case of *Harper v. State,* 109 Ala. 28, 19 So. 857. In that case an act entitled "An act to amend an act for the trial of misdemeanors in Shelby county, approved February 12, 1891," was held to conflict with the constitution of Alabama providing that "each law shall contain but one subject, which shall be clearly expressed in the title." The trouble with the amended act was that it provided for the trial of felonies, something not included by the title.

In *State v. Tibbets, supra,* this court laid down the following rules: "Under the authorities the following propositions governing the enactment of laws are embraced in section 11, article 3 of the constitution: First. A plurality of subjects is prohibited. Second. The title of an act must fairly express the subject of legislation. Third. Matters can only be included in an amendatory bill which are germane to the original act. Fourth. An act not complete in itself, but which is clearly amendatory in its character and scope, must set forth the section or

sections as amended, and repeal the original section or sections." Authorities are cited in support of the propositions stated. Applying the rules herein laid down to the instant case, can it be said that any of these rules are violated? Concerning the contention that the title of the act does not fairly express the subject of legislation, we say that the amendment offered was an amendment to the educational system of the state. It did not purport to be an amendment alone of a particular section, but it amended three sections of subdivision XIV, of chapter 44, of the Consolidated Statutes of 1891. At the time it did so, said chapter 44 contained the whole educational system of Nebraska, and the act in question amended that system, and it amended a statute book that had been recognized by the legislature, known as the Consolidated Statutes of Nebraska.

In *State v. Tibbets, supra,* the court quoted from the brief of counsel: "The rule that an amended section must be germane to the original section amended is not a rule established by constitutional authority, but is one which necessarily arises from a compliance with the above named constitutional provision; and it simply arises from the fact that when a section is amended it is supposed to stand by itself in its amendment, to take unto itself a title which the subject matter of this section will allow and must be confined to a certain object. That an amended section must be germane to the section amended does not mean that it must be confined to the same limits; that it cannot be enlarged and extended beyond the limits of the original section. It only means that it must be confined to the same subject matter, or have the same object in view, and this subject matter or object may be general in its nature. So long as the legislature fairly confines itself to the object of the original section it is sufficient." Now, concerning this argument made by counsel, Judge NORVAL said in the opinion: "But it did not so confine itself in this case." Here is seemingly a recognition of the proper rule. If this rule is applied to

the instant case, it would seem that it must be held that all amendments relate back to the original title of the bill entitled "An act to establish a system of public instruction in the state of Nebraska," and under which everything that is sought to be done in this case might be done.

In *Kockrow v. Whisenand*, 88 Neb. 640, it was contended that, where the name of the school district was "The School District of Harvard, in the County of Clay, in the State of Nebraska" as fixed by statute, and the designation used was "Harvard School District No. 11, Clay County, Nebraska," the variation was material. The court said of this objection: "This objection, in the light of the stipulation of facts, is too technical for consideration." The court said of this: "We think it would be 'straining at a gnat' to hold that such use would invalidate any proceedings taken by the board of a school district." The opinion in that case seemingly tends to show that it is the view of this court that it is no part of its duty to tear down that which the people have built up by an expenditure of time, labor and money, coupled with a good faith effort at legislation. This view is seemingly emphasized by what the court further said: "That the boards of education of said district have, since May, 1887, employed superintendents of public instruction for various periods of time, in one instance for the period of three years; that no action has ever been instituted by plaintiffs or any one else or by the state to question the right of the district to operate under subdivision XIV, ch. 79, Comp. St. 1909, and no written objection thereto has ever been filed with any county superintendent or with the boards of education of said school district; * * * that plaintiffs have been residents and taxpayers and legal voters in said district for from 6 to 23 years. It thus appears that this school district has been in existence and its board of education performing all the functions and duties of a board for over 23 years, without any objection either by the state or by any resident, legal voter or taxpayer of the district."

Mr. Pettis, who objects to registering the bonds, in his brief as *amicus curiæ* says that the same rule does not apply where the attempt is to amend a specific section as where the attempt is made to amend a chapter. And he says: "Nor does the same rule apply as in cases where the title is 'An act to amend chapter 79 of the Compiled Statutes for the year 1909, and to repeal certain specified sections thereof.'" Now, he says in such a title as that, in such a case, it may be well said that that title is broad enough to permit by way of amendment the addition of any new matter which might have been included under the original title. He also says: "It will be conceded that usually the people have no knowledge of what is before the legislature, except what may be acquired from the custom of the press in publishing the titles of the several bills as they are introduced. Very rarely indeed is the full text of a bill published by the press, and, of course, until the legislature is over the session laws are not available." He then says: "Would they (the people) have any idea of notice that the legislature proposed to provide for the calling of an election, fixing the rate of interest which a bond might carry, and to confer a power to borrow money and issue bonds in an unlimited amount, etc?" Continuing he says: "If, however, the title was an act to amend a previous act, as for instance chapter 79, laws of 1909, then they would have fair notice that the legislature might be proposing to make radical changes in the entire law and that it behooved them to watch out." In the careful brief which Mr. Pettis has filed in the case, he has seemingly admitted the force of the proposition that there is no deception if the matter proposed to be amended is made a part of the educational system of the state. Courts may not be expected to look with favor upon an attack of a purely technical nature if there has been a substantial compliance with the main purpose of the law. In this case since 1893 the section referred to has been amended from time to time, and it provides at the present time for the issue of bonds very much as it did

after it had been amended by the act of 1893 which provided for their issue. If this was objectionable it should have been attacked long ago. It is an integral part of the educational system of the laws of the state. To declare it unconstitutional and void is to unsettle and depreciate the value of school securities in our state. It would seem that the brief of counsel who appears as the friend of the court to assist the attorney general is an admission of the fact that there may have been no deception of the public or of the legislature by the use of the title employed to designate the amendment made in 1893. By looking at chapter 79 of the Compiled Statutes of 1881 the person who looked saw the heading "Chapter 79. Schools." When the same person looked at chapter 44 of the "Consolidated Statutes of 1891" he saw the heading "Public Instruction. Schools." He further saw, when he looked at the last mentioned book, "Consolidated Statutes of 1891," that the book was certified by the secretary of state, and by J. E. Cobbey, who seems to have been "appointed by the legislature of the state of Nebraska to compile, annotate, edit, and publish all the general laws of the state now in force," and saw that he certified "that the laws contained in this volume are true and accurate copies of the originals, as shown by the Revised Statutes of 1866, and the original rolls now on file in the office of the secretary of state."

The amendment of 1893 put into section 24 and into the act to which the section belonged the provisions concerning the issue of bonds for the use of the district. The first amendment of section 24, after that provision of 1893 was put into it, adopted the provision as it found it. Section 24, as it appeared in subdivision XIV, ch. 79, Comp. St. 1893, and in the session laws of 1893, ch. 31, contained the provision concerning the issue of school bonds. It was put into the session laws of 1893 under the title "An act to amend sections 3706, 3721 and 3722, of subdivision XIV, of chapter 44, of the Consolidated Statutes of Nebraska, and to repeal the original sections amended."

Section 3722, referred to as being in the Consolidated Statutes of Nebraska, corresponds to section 24 of the Compiled Statutes of 1893, and for two years before the meeting of the next legislature this act was published as a part of the educational system of the state in the session laws and in the other publications containing the statutes of the state. The residents of the district and the members of the legislature could all see the section with the provision in it to issue bonds. When section 3722 was amended by the passage of the act of 1893, it was amended under a title that could not have deceived any one, because it appeared as subdivision XIV, of chapter 44, of the Consolidated Statutes of Nebraska, which contained the whole educational system of the state. We call attention to the fact that the act of 1893 changed the limitation of taxation for general school purposes from 2 per cent. to 15 mills, which, of course, was within the title and was valid legislation, and on account of its change and in lieu of the 5 mills' reduction the act provided that the board might borrow money and issue bonds therefor. Under the title which was to amend section 24, which then contained a limitation of 2 per cent. upon the power of taxation, the legislature changed the manner of raising the amount so limited, providing that a part thereof might be raised as theretofore had been done, and that the remainder thereof might be raised by issuing bonds in lieu of a direct levy.

In 1897 the legislature passed an act entitled "An act to amend section 24, chapter 79, subdivision XIV, of the Compiled Statutes, 1895, to provide for the exclusion of school bond taxes in the computation of the aggregate school taxes under the provisions of this act, and to repeal section 24, chapter 79, subdivision XIV, of the Compiled Statutes of 1895." Laws 1897, ch. 70. This title, it will be noticed, mentions school bonds and the section of the Compiled Statutes referred to, as the section appeared in the statutes of 1895. Section 24, as it appeared in the statutes of 1895, had prefixed to it as head words,

"Limitation of Taxation. Bonds." The section also appeared under "Subdivision XIV. Schools in Cities." This section, so formed, went into the Compiled Statutes of 1901 as section 24, subd. XIV, ch. 79. If the laws which were enacted prior to 1901 amending this section are unconstitutional as far as they authorized the issuing of bonds, the section, as it existed before the act of 1897, was repealed by that act and the substance thereof reenacted. There can be no doubt then, whatever may be thought of the prior legislation referred to, that at least a part of the section, as it appeared in the Compiled Statutes of 1901, was valid. Under the conditions which we have recited, the legislature might well have supposed the whole section constitutional. In 1903 the legislature, regarding the section as valid as it appeared in the Compiled Statutes (for we must uphold acts of the legislature if it is reasonably possible to do so) enacted a statute entitled "An act to amend section 24, of subdivision XIV, chapter 79, Compiled Statutes of Nebraska, and to repeal said original section." Laws 1903, ch. 94. The purpose of the constitutional provision in question is to prevent surreptitious legislation; to enable all members of the legislature to know from the title of the proposed law what general subject it intended to legislate upon. Would the fact, if it were a fact that some part of the section named in the title of the act might, by strict construction, be found unconstitutional prevent the lawmakers from taking notice that it was intended to legislate upon the general subject of the section as it appeared in the authorized compilation of the laws? We do not think we ought to give such a meaning to the rule announced in *Miller v. Hurford, supra.* If the title is such that it must necessarily call attention to the general subject of the proposed legislation, it cannot be said that the subject is not expressed in the title, when we consider the purpose of the constitutional requirement and the evil it was designed to remedy. The amendment of 1903 was germane to the section of the Compiled Statutes named in the title,

within the meaning of the rule in *Miller v. Hurford*, *supra*. The section so amended is now section 24, subd. XIV, ch. 79, Comp. St. 1911.

There can be no doubt that the legislature intended to provide a law to enable school districts containing cities to borrow money according to their needs. For 18 years said section 24 has been acted upon by all the city school districts in the state, except the metropolitan city school districts and those districts containing cities having a population of from 25,000 to 40,000. Concerning the latter class, it should be said that the legislature of 1903 passed an act almost identical with said section 24 and in almost the same words. Laws 1903, ch. 98, sec. 27 (Comp. St. 1903, ch. 79, subd. 14a, sec. 27). This action clearly shows the purpose of the legislature to authorize school districts to borrow money by issuing their bonds; unless the amendments made to section 24 have enabled it to become a valid law, then all the school districts in the state containing a city of more than 1,500 inhabitants and less than 25,000 are left without any way to issue bonds and borrow money. Every reasonable intendment is in favor of the constitutionality of section 24. It should be held valid unless it clearly violates the spirit of the constitutional limitation. There is perhaps little tendency at the present time to substitute the will of the judges for the expression of the people through their representatives in legislative session assembled. What the legislature declares to be the law should be accepted as such by the courts unless there is a clear disregard of constitutional restrictions.

In *State v. Board of Control*, 85 Minn. 165, the legislature had passed an act under a title which reads, "An act to create a state board of control, and to provide for the management and control of the charitable, reformatory and penal institutions of the state, and to make an appropriation therefor, and to abolish the state board of corrections and charities." The state normal schools of Minnesota were placed under the management of the

board of control, and a member of the normal school board objected, and on his relation the attorney general brought *quo warranto* to test the right of the board of control to manage the financial affairs of the normal schools of the state. It was claimed by the attorney general that the statute creating a "State Board of Control," so far as it related to normal schools, was in violation of section 27, article 4 of the state constitution, providing that "no law shall embrace more than one subject, which shall be expressed in its title." The Minnesota court prepared and delivered an exhaustive opinion holding that normal schools were within the title of the act and that the act was valid. The court laid down the following rules set forth in the first paragraph of the syllabus: "That every law is presumed to be valid; that this provision of the constitution is to be liberally construed, and all doubts resolved in favor of the law; that the title should also be liberally construed, giving to its general words paramount weight; that it is not essential that the best or even accurate words in the title be employed, but the remedy to be secured and mischief avoided furnishes the best test of its sufficiency to prevent such title from being made a cloak or artifice to distract attention from the substance of the act, provided the title be fairly suggestive, and not foreign to the purpose of the statute." In the body of the opinion the court say: "The duty of a court to set aside a statute because it is invalid is peculiarly an incident of our national and state policy." The court quote from the opinions of Chief Justice Shaw in *In re Wellington*, 16 Pick. (Mass.) 87, 26 Am. Dec. 631, Chief Justice Marshall in *Fletcher v. Peck*, 6 Cranch (U. S.) 87, Mr. Justice Washington in *Ogden v. Saunders*, 12 Wheat. (U. S.) *213, Mr. Justice Cornell in *Curryer v. Merrill*, 25 Minn. 1, 33 Am. Rep. 450, and Chief Justice Gilfillan in *Woodruff v. Town of Glendale*, 26 Minn. 78. Chief Justice Shaw said: "When called upon to pronounce the invalidity of an act of legislation passed with all the forms and solemnities requisite to

28

give it the force of law, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt." Chief Justice Marshall said: "The question whether a law be void for its repugnancy to the constitution *is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case.*" Mr. Justice Washington said: "If I could rest my opinion in favor of the constitutionality of the law on which the question arises on no other ground than this doubt, * * * that alone would, in my estimation, be a satisfactory vindication of it." Mr. Justice Cornell said: "Plenary legislative power is therefore the rule, while want of it is the exception. As a sequence it logically follows that every statute duly passed by the state legislature is presumably valid, and this presumption *is conclusive* unless it affirmatively appears to be in conflict with some provision of the federal or state constitution; and, in order to justify a court in pronouncing it invalid because of its violation of some clause of the state constitution, its repugnancy therewith must be so *'clear, plain and palpable'* as to leave no reasonable doubt or hesitation upon the judicial mind." Chief Justice Gilfillan said: "There is no express provision to that effect. But, rather than hold the law to be void, the court will find such provision by implication, if the act will admit of such construction," to sustain it.

The objection to these bonds because of alleged unconstitutionality of attempted legislation presents a very important question. The subdivision as amended applies to many cities of the state. If that part of section 24, as it now appears, which authorizes the issue of bonds is held unconstitutional, very many outstanding bond issues will be invalidated. Before leaving the consideration of this part of the case, it may be proper to say that the

constitutional inhibition does not seem to have been disregarded in its purpose, because there is no evidence of surreptitious legislation, and the statute sought to be attacked has been in use without question for eighteen years.    Succeeding legislatures have recognized and amended it.  We hold that the rule stat: .1 in the syllabus in *Miller v. Hurford,* 11 Neb. 377, is generally applicable. If there is nothing to indicate the subject of the proposed legislation except the language of the section named in the title, the rule stated will apply.  The constitutional provision requires that the title of the act shall be such as to inform the members of the legislature upon what subject it is proposed to legislate in the act, but it is not indispensable that the title shall recite all the details of the proposed legislation.    The legislature has amended this section many times since the authority to issue bonds has been incorporated therein and under proper titles, so that the legislature has been apprised of the purpose intended.    The amendments of the section made in 1901, 1903, and 1911 each repealed as it was made the preceding amendment, and finally left the section as it at present exists.  As these amendments were within the title of the original act, they each became valid as made, and the last amendment leaves the present section in force as if it had been included in the original act of 1881 or in the title of any subsequent amending act.  To refuse to adopt this view is to leave this school district and others of the same class without the means to borrow money for needed buildings, and it unsettles and depreciates the value of school bonds approximating two millions of dollars.

We hold that section 24 is valid, and that the issue of the bonds thereunder was not forbidden.

With respect to the contention that the amendments were void because they did not contain sections 2, 3, 4 and 5 of subdivision 15 of the Compiled Statutes of 1911, it is enough to say that the subdivision indicated simply prescribes a different manner for issuing school bonds, and that it does not apply to the school district of Lincoln.

Concerning the question as to where the high school building should be located, and as to whether there should be an annex to a grade school building, it is the view of the court that these matters were not necessarily connected with the purpose to issue the bonds; that the location of the school buildings did not in any way determine whether the bonds should or should not be issued. There was no dual proposition. *Hurd v. City of Fairbury,* 87 Neb. 745.

It is alleged in the attorney general's brief that the district court should have held that the election was void because the school district takes in a larger amount of territory than that covered by the city of Lincoln. It is not shown that any voters in the territory outside of the limits of Lincoln were prevented from casting their votes, and no complaint is made by any voter that he was denied the privilege of voting. It would also seem that this question has been disposed of in the case of *Kockrow v. Whisenand, supra,* where the court held that it was not the population of the city or the population of the district which controlled, but it was the particular organization of the district which could not subsequently be questioned. It would seem that this question may not properly be raised except by the voter or voters who have been wronged; but, whether that be true or not, no such complaint is made in this case.

The last point offered is that the election notice was not published in each of the daily papers for the period of 20 days. The answer to that is that the statute does not require it. The allegation is that the notice was published in a weekly paper called the "Trade Review" for the period of 20 days. That is ˌ.ough under the statute. The language is, "Notice whereof shall be given for at least 20 days in one or more papers published within the district."

The judgment of the district court is right, and it is

AFFIRMED.

State v. Barton.

REESE, C. J., not sitting.

ROSE, J., concurs in the affirmance only.

Syllabus by SEDGWICK, J.

1. Statutes: AMENDMENT: CONSTITUTIONAL LAW: TITLE OF ACT. The rule stated in the syllabus in *Miller v. Hurford*, 11 Neb. 377, "When the title of an act is to *amend* a particular section of a statute, the proposed amendment must be germane to the subject matter of the section sought to be amended or it will be void," is generally applicable and will be applied in all cases when there is nothing to indicate the subject of the proposed legislation except the language of the section named in the title of the amendatory act.

2. ——: ——: ——: ——. The purpose of the constitutional limitation (Const., art. III, sec. 11) that the subject of legislation must be clearly expressed in the title of the act is to prevent surreptitious legislation; to enable members of the legislature and others interested to know from the title of the proposed law what general subject it is intended to legislate upon. When the title of an act is to amend a particular section of the authorized compilation of the statutes which appears to be valid, it is sufficient if the amendment is germane to the section named in the title, although some part of the subject of such section might by a strict construction be found unconstitutional.

3. Schools and School Districts: BONDS: SUBMISSION OF PROPOSITION FOR ISSUANCE. A proposition of a school district to issue bonds must be submitted separate and distinct from any other that is not germane thereto. It is not necessary that it be submitted at an election at which no other proposition is submitted.

4. ——: ——: ——. An election upon a proposition to vote bonds for a new school building will not be invalid because at the same election the voters are asked to choose between two locations for the proposed building.

5. ——: ——: ——: VOTING DISTRICT. When a school district includes a city and also other territory, an election to vote bonds upon the property of the district will not be held invalid because no voting places are named in the territory outside of the city, if the electors in such territory are notified to vote at the nearest voting place in the city, and it does not appear that any elector was prevented from voting at the election.

6. ——: ——: ——: PUBLICATION OF NOTICE. The publication

of the notice of school district election to vote bonds must be for 20 days prior to such election; such publication in a weekly paper of general circulation in the district is sufficient.

SEDGWICK, J., concurring.

The school district of the city of Lincoln applied to the district court for Lancaster county for a writ of mandamus to require the respondent, Silas R. Barton, as auditor of public accounts of the state of Nebraska; to register the bonds in the sum of $350,000, issued by the district. Upon trial in the district court the writ was awarded as prayed, and the respondent has appealed.

It is contended that the school district of the city of Lincoln has no authority or power to issue bonds, the section of the statute under which these bonds were issued being unconstitutional. It is also objected that "the propositions submitted at said election were illegal and void for the reason that they were dual, if not multiform," and that the election on the question of the issuance of said bonds was illegal and void for the reason that the school district extends beyond the limits of the city and that in this territory outside of the city limits there were no voting places provided where the school electors might appear and vote.

1. The objection to these bonds because of alleged unconstitutionality of attempted legislation presents a very important question. The subdivision as amended applies to all cities of the state which have 1,500 or more inhabitants with one or two exceptions. If that part of section 24, as it now appears, which authorizes the issue of bonds is held unconstitutional, very many outstanding bond issues will be invalidated. It is contended that section 24, subd. XIV, ch. 79, Comp. St. 1911, so far as it attempts to authorize issuing school district bonds, is unconstitutional. In 1881 the legislature enacted a comprehensive general statute entitled "An act to establish a system of public instruction for the state of Nebraska." Laws 1881, ch. 78. This statute, as originally enacted, contained 14 subdivisions. The fourteenth subdivision

consisted of 29 sections, and section 24 was as follows: "That the aggregate school tax shall in no one year exceed one per cent. upon all the taxable property of the district." In 1883 this section was amended, making the limit 2 per cent. instead of 1 per cent. In 1891 this section appeared in the Consolidated Statutes of Nebraska as section 3722, subd. XIV, ch. 44; and in 1893 the legislature passed an act entitled "An act to amend sections 3706, 3721, and 3722 of subdivision XIV of chapter 44 of the Consolidated Statutes of Nebraska, and to repeal the original sections amended." Laws 1893, ch. 31. In this act the section as amended contains the provision that the board of education "may borrow money upon the bonds, which they are hereby authorized and empowered to issue," it is contended that this provision is void as not being within the title of the act, and that the same objection exists to the various subsequent attempts to amend this section.

In *Miller v. Hurford,* 11 Neb. 377, and in other cases, the rule is said to be that, "when the title of an act is to *amend* a particular section of a statute, the proposed amendment must be germane to the subject matter of the section sought to be amended or it will be void." It is said in the opinion: "An amendment must be germane to the subject matter of the act or section to be amended. * * * Experience has shown that, in the absence of constitutional restrictions, the rule at times is liable to be overthrown, and objectionable and pernicious legislation is the result." The opinion does not state the title of the act, but assumes that the provision which is held to be unconstitutional was made a part of the section amended. The title of the act was "An act to amend sections fifty, fifty-one, seventy-one, and one hundred and five of an act entitled 'An act to provide a system of revenue,' approved February 15, 1869, and to make further provisions for collecting revenue." Laws 1871, p. 81. This title refers to the general revenue act of 1869, and proposes to amend certain specified sections, "and to make further provisions for collecting revenue." That part of the act

held to be unconstitutional appears to have been introduced into the act under the last clause of the title, to make further provisions for collecting revenue.

This rule, however, stated in the syllabus is generally applicable. If there is nothing to indicate the subject of the proposed legislation except the language of the section named in the title, the rule stated will apply. The constitutional provision requires that the title of the act shall be such as to inform the members of the legislature upon what subject it is proposed to legislate in the act. It is not indispensable that the title shall recite the details of the proposed legislation. The legislature has amended the section now considered many times since the authority to issue bonds has become incorporated therein. In 1893 this section was amended. Laws 1893, ch. 31. The act changed the limitation of taxation for general school purposes from 2 per cent. to 15 mills, which, of course, was within the title and was valid legislation, and on account of this change, and in lieu of the five mills' reduction, the act provided that the board might borrow money and issue bonds therefor. Under the title which was to amend section 24, which then contained a limitation of 2 per cent. upon the power of taxation, the legislature changed the manner of raising the amount so limited, providing that a part thereof might be raised as theretofore had been done, and that an additional fund might be raised by issuing bonds in lieu of a direct levy. In 1897 the legislature passed an act entitled "An act to amend section twenty-four (24), chapter seventy-nine (79), subdivision fourteen (14) of the Compiled Statutes of 1895, to provide for the exclusion of school bond taxes in the computation of the aggregate school taxes under the provisions of this act, and to repeal section twenty-four (24), chapter seventy-nine (79), subdivision fourteen (14) of the Compiled Statutes of 1895." Laws 1897, ch. 70. The section of the Compiled Statutes referred to, as it appeared in the statutes of 1895, had prefixed to it as head words, "Limitation of Taxation: Bonds." This

section, so formed, went into the Compiled Statutes of 1901 as section 24, subd. XIV, ch. 79, and this title, it will be noticed, mentions school bonds. If the laws amending this section which were enacted prior to that time were unconstitutional as far as they authorize the issuing of bonds, there can be no doubt that at least a part of the section, as it appeared in the Compiled Statutes of 1901, was valid. Under the conditions above recited the legislature might well have supposed the whole section constitutional. It became section 24, subd. XIV, ch. 79, Comp. St. 1893. In 1903 the legislature, regarding the section valid as it appeared in the Compiled Statutes (for we must uphold acts of the legislature if it is reasonably possible to do so), enacted a statute entitled "An act to amend section twenty-four of subdivision fourteen, chapter 79, Compiled Statutes of Nebraska, and to repeal said original section." Laws 1903, ch. 94.

The purpose of the constitutional provision in question is to prevent surreptitious legislation; to enable all members of the legislature to know from the title of the proposed law what general subject it is intended to legislate upon. Would the fact, if it were a fact that some part of the section named in the title of the act of 1893 might by strict construction be found unconstitutional, prevent the lawmakers from taking notice that it was intended to legislate upon the general subject of the section as it appeared in the authorized compilation of the laws? We do not think we ought to give such a meaning to the rule announced in *Miller v. Hurford, supra.* If the title is such that it must necessarily call attention to the general subject of the proposed legislation, it cannot be said that the subject is not expressed in the title, if the purpose of the constitutional requirement and the evil it was designed to remedy is considered. The amendment of 1903 was germane to the section of the Compiled Statutes named in the title, within the meaning of the rule in *Miller v. Hurford.* The section so amended is now substantially the section being considered and does not violate the constitutional requirement in question.

2. The abstract contains the published notice of the election, from which it appears that the proposition submitted was: "Shall the board of education of said district have power to borrow money and pledge the property of said district upon its bonds, and to issue and negotiate said bonds in the sum of $350,000, to be used" for three several purposes. The first purpose stated in the notice was "erecting and completing a high school building," and the notice stated that this building was "to be located on the place and upon the site to be selected by the electors at said election." The notice further stated that there would be two places voted upon, and the places were specified in the notice. The second purpose for which the proceeds of the bonds were to be used, as stated in the notice, was "for erecting and completing one grade school building," and the notice specified where that building should be located. The third purpose stated in the notice was for an annex to the Saratoga school building, stating the location of that building. The form of the ballot used is not shown in the abstract, and we have no other information as to the manner in which the proposition was submitted, except as indicated in the published notice. It is no doubt true that, when a proposition to issue bonds is submitted to the voters, it must be submitted "in *such manner as to enable the voters intelligently* to express their opinion upon it, and for that purpose the proposition should be submitted to them separate and distinct from any other proposal which is not germane to the question upon which a vote is desired." 2 Dillon, Municipal Corporations (5th ed.) sec. 891. This does not mean that it must be submitted at a separate election at which no other question or matter is submitted, and there is no such requirement in the statute. No objection is made to the form of the ballot, and it must be presumed to be sufficient in that respect. It is urged that the board was not authorized to submit the question of selecting sites for the buildings, and that some voters in the vicinity of the proposed locations might be in-

fluenced thereby and so vote upon the issuance of the
bonds, which otherwise they would not do. It is sug-
gested that, if such proceeding is allowed, the board might
designate a large number of sites and unduly influence
the adoption of the proposition. No precedent is cited
for avoiding upon such grounds an election otherwise
duly held. This question so submitted involved only the
choice between the site of the present high school build-
ing and another proposed location, and it seems impos-
sible that this could have improperly influenced the
voters.

3. The objection that there were no voting places
provided in the territory outside of the city limits does
not seem to require that the election should be declared
invalid. The evidence shows that this has been the cus-
tomary way of voting at school district elections, and it
appears to have been generally understood that the vot-
ers in the district outside of the city should vote at the
polling places in the city nearest to their respective resi-
dences. At all events, there is no evidence that any
elector was prevented from voting in this election, and the
voters themselves are not now complaining. It seems
that this objection is not well taken.

4. The final contention is that the publication of the
notice of this election was insufficient. The notice was
published in the "Trade Review," a weekly paper pub-
lished in the district. It was also published in two of the
daily papers published in the city of Lincoln. This pub-
lication in the daily papers was apparently not relied
upon as a legal publication. The abstract shows that a
witness who was examined as to the publication of these
notices testified "that he would not say the notice pub-
lished in the Star and Journal (the two daily papers)
were published as much as 20 days before the election,"
and that there was only one publication of the notice in
these papers. This evidence does not show that the pub-
lication in the Trade Review was insufficient. The stat-
ute requires that the notice "shall be given for at least 20

days in one or more papers published within the district." The notice therefore in the Trade Review for more than 20 days prior to the election was sufficient.

These considerations require that the judgment of the district court be

AFFIRMED.

BARNES, FAWCETT, and LETTON, JJ., concur in the conclusion in the opinion by HAMER, J., and in the syllabus and reasoning in the concurring opinion by SEDGWICK, J.